**CALIFORNIA REPUBLICAN PARTY, et al., Plaintiffs,**

v.

**Michael MERCIER, et al., Defendants.**

**No. CV 86–6896 MRP.**

United States District Court, C.D. California.

Dec. 22, 1986.

**930**

John A. Slezak, Iverson, Yoakum, Papiano & Hatch, Los Angeles, Cal., for plaintiffs.

Joseph Remcho, Remcho, Johansen & Purcell, San Francisco, Cal., for defendants.

### ORDER DISMISSING COMPLAINT IN PART AND REMANDING COMPLAINT IN PART

PFAELZER, District Judge.

This Court heard oral argument on plaintiffs' motion to remand this case to state court, and defendants' motions to dismiss and to strike plaintiffs' complaint on December 1, 1986. For the reasons discussed below, the Court has concluded that plaintiffs' motion to remand this case without reaching the merits should be denied and that defendants' motion to dismiss counts two and three of plaintiffs' first amended complaint with prejudice should be granted. The federal claims having been dismissed, count one of the first amended complaint must be remanded to the state court.

### I. *Background*

Plaintiffs in this case (collectively referred to as "the Party") are the California Republican Party, its chairman, Clair W. Burgener, and a member of the Party, John A. Slezak. Defendants (collectively referred to as "Mercier") are two individuals, Michael Mercier and Jim Corey, and their unincorporated business association, Republic Media Group, as well as one hundred unnamed Does.

The facts underlying this controversy are relatively simple. Just prior to the June 1986 California primary election, Mercier mailed several million slate mailers to Republican voters all over California. These mailers prominently featured slogans such as "Vote Your Republican Team '86" and "Republican Ticket." The mailer endorsed a slate of local and statewide political candidates and statewide ballot propositions for voters in the Republican primary. The mailer prominently identified which proponents of candidates and propositions had paid for the production of the mailer (most notably proponents of U.S. Senate candidate Ed Zschau, Lieutenant Governor candidate Mike Curb, and opponents of ballot Proposition 51), and which candidates had not paid, but were endorsed anyway (most notably Governor George Deukmejian). On one side of the mailer was the legend "Republic Media Group Republican Ticket-An Unofficial Political Group," which Mercier contends meets the identification requirement of Cal.Elec.Code § 11704 (West 1977), relating to postcard mailers. The mailer did not contain the more detailed legend required by Cal.Elec.Code § 11703 (West 1977) for folded letter mailers, which the Party contends applies to this mailer.

It is the Party's position that Mercier intended to deceive Republican voters into believing that the mailer represented the official endorsements of the Party. Before the June primary election, the Party believed it was legally barred from endorsing candidates in contested Republican primary elections. (In fact, on June 18, 1986, the Ninth Circuit affirmed a district court's

order enjoining enforcement of California's ban on primary endorsements, on the ground that the ban violates the First Amendment. The district court's order had been stayed pending appeal. *San Francisco County Democratic Central Committee v. Eu*, 792 F.2d 802, 820 (9th Cir.1986), *petition for cert. filed*, 55 U.S.L.W. 3238 (U.S. Oct. 7, 1986) (No. 86–434).) The Party had actually endorsed Proposition 51, while the mailer opposed it.[1]

On June 2, 1986, the day before the primary, the Party commenced this suit in Superior Court of the State of California in and for the County of Los Angeles. At that time, the Party sought injunctive relief under state law against Mercier. On September 23, 1986, the Party sought and obtained permission from the state court to amend its complaint. The amended complaint included, for the first time, causes of action against Mercier under the federal civil rights laws. As it now stands, the first amended complaint contains three counts, count one under Cal.Elec.Code § 11703, count two under 42 U.S.C. § 1983 (1981), and count three under 42 U.S.C. § 1985(3) (1981). Mercier petitioned for removal to this Court on October 22, 1986, within thirty days of the filing of the amended complaint.

## II. *The Party's Motion to Remand*

The Party urges this Court to remand this case to state court before reaching the merits of its first amended complaint on three grounds. First, the Party argues that by participating in the state court proceeding between these parties, Mercier waived any right to remove to this Court. Second, the Party argues that since this case involves significant unresolved issues of state law, the case is appropriate for

*Pullman* abstention. Third, the Party argues that since the state and federal courts have concurrent jurisdiction over civil rights actions, its choice to litigate in state court should not be disturbed.[2]

### A. *Waiver of Removal*

It is well established that a defendant can make such affirmative use of the processes of a state court as to constitute waiver or estoppel of any right to remove to federal court. What acts legally constitute waiver is somewhat less clear. *See generally*, 1A J. Moore & B. Ringle, *Moore's Federal Practice* ¶ 0.157[9] (2d ed. 1986). Filing a permissive counterclaim or third-party complaint, for instance, does constitute waiver. *Sood v. Advanced Computer Techniques Corp.*, 308 F.Supp. 239, 242 (E.D.Va.1969). In *Chicago Title & Trust Co. v. Whitney Stores, Inc.*, 583 F.Supp. 575 (N.D.Ill.1984), the defendant was held to have waived removal. That case was a state unlawful detainer action, which normally would have gone to trial within two weeks of filing. Defendant sought and received a continuance (without mentioning any intent to remove), and then filed for removal. The court held that in the circumstances, seeking the continuance in state court constituted a waiver of the right to remove. *Id.* at 577.

In this case, the Party attempts to analogize to *Chicago Title*. In the state court, the Party was aggressively attempting to obtain depositions from the various defendants. Mercier sought and obtained a stay of discovery on the ground that discovery would be unnecessary if, as Mercier was urging, the Party had no legal

---

1. The notice required by § 11703 is as follows: "NOTICE TO VOTERS. (Required by law.) The endorsement hereon is by an unofficial political group. Official organizations of the (name) Party are prohibited by law from endorsing candidates in primary elections." Section 11703 also contains separateness and typeface requirements for this notice. After *Eu*, the last sentence of the notice no longer accurately states the law.

2. The Party also argues that its first state law cause of action is separate and independent from its two federal civil rights counts, and therefore should be remanded under 28 U.S.C. § 1441(c) (1973) even if this Court takes jurisdiction on the federal claims. In view of the outcome of the other motions in this case, this suggestion is effectively mooted.

right to recover damages.[3] The stay was granted, and then Mercier filed for removal. *Chicago Title* does not support the Party's contention. As a general rule, only clear and unequivocal waivers will defeat a party's right to remove to federal court. *Carpenter v. Illinois Central Gulf R. Co.,* 524 F.Supp. 249, 251 (M.D.La.1981). Federal courts strictly apply waiver when removal occurs close to the time of trial in the state action. *See Chicago Title,* 583 F.Supp. at 577; *Heniford v. American Motors Sales Corp.,* 471 F.Supp. 328 (D.S.C. 1979), *appeal dismissed,* 622 F.2d 584 (4th Cir.1980). This case does not involve similar concerns. This case, unlike *Chicago Title,* was not close to trial in state court. The stay in this case only concerned discovery. Moreover, Party has not demonstrated any bad faith on the part of Mercier. Mercier has a statutory right to remove, the removal petition was timely, and the Party has not demonstrated that anything occurred in state court which should bar removal.

### B. *Pullman Abstention*

 Under *Railroad Comm'n. of Texas v. Pullman,* 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941), and its progeny, federal courts should sometimes abstain from proceeding even where jurisdiction is proper. There are arguably two abstention doctrines relevant to this case.[4] One is the doctrine that federal constitutional questions should not be reached where an interpretation of an ambiguous state law might dispose of the controversy. Second is the doctrine that federal courts should, even where the federal constitution is not implicated, avoid resolving open questions of state law. Even if this Court were to be required to reach questions concerning the state law at issue here, Cal. Elec.Code § 11703, neither doctrine would apply to this case.[5] The law at issue is quite clear. Moreover, the state courts have definitively interpreted § 11703 in light of constitutional challenge, in *California Democratic Council v. Arnebergh,* 233 Cal.App.2d 425, 43 Cal.Rptr. 531, *appeal dismissed,* 382 U.S. 202, 86 S.Ct. 395, 15 L.Ed.2d 269 (1965); *see Wisconsin v. Constantineau,* 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971) (no abstention if state statute clearly construed). To the extent that uncertain state law issues arise, the Court could certify them to the state courts for decision. The Supreme Court has endorsed the use of certification as a substitute for abstention, where a potentially dispositive question of state law is uncertain. *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974).[6]

---

**3.** In the Party's reply to Mercier's opposition, the Party seeks to rely as well for its waiver argument on Mercier's consent to entry of judgment on a permanent injunction against future violations of Cal.Elec.Code § 11703. This consent, filed on July 24, 1986, and withdrawn on Oct. 10, 1986, was filed long before the Party amended its complaint to include federal claims. Acts before removability becomes apparent cannot waive removability. *See, e.g., Caldwell v. Montgomery Ward & Co., Inc.,* 207 F.Supp. 161, 162 (S.D.Tex.1962). The weight of authority also indicates that filing a responsive pleading does not constitute an acceptance of the state court's jurisdiction, despite the Party's contention to the contrary. *See Carpenter, infra,* 524 F.Supp. at 251; *Moore's Federal Practice, supra,* ¶ 0.157[9] at 153–54.

**4.** On the different abstention doctrines, *see* 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 4241 at 446–49 (4th ed. 1978 and 1986 Supp.).

**5.** Of course, the result which this Court reaches does return the state law question to state court. However, consideration of the abstention issue is still appropriate, because it affects this Court's ability to reach the merits of any of the Party's causes of action.

**6.** Abstention would be particularly inappropriate in this case because considering Mercier's challenge to § 11703, if the Court were to reach that issue, would involve interpreting a federal decision, which casts some doubt on the continuing vitality of § 11703. *San Francisco County Democratic Central Committee v. Eu,* 792 F.2d 802 (9th Cir.1986), *petition for cert. filed,* 55 U.S.L.W. 3238 (U.S. Oct. 7, 1986) (No. 86–434). Because of the results of the other motions in this case, this Court does not express any opinion as to the merits of Mercier's challenge to *Arnebergh* or § 11703.

## C. Remand Because of Concurrent Jurisdiction

The Party argues that since the federal civil rights statutes have been interpreted to create concurrent jurisdiction in both the federal and state courts, its choice of forum should not be disturbed.[7] The argument is as follows: since Congress created concurrent jurisdiction, not exclusive jurisdiction, it must have meant for plaintiffs to be able to choose either forum. This position has found some scattered support. *Young v. Board of Education of Fremont School District*, 416 F.Supp. 1139, 1141 (D.Colo.1976); *Salveson v. Western States Bankcard Ass'n.*, 525 F.Supp. 566, 573 (N.D.Cal.1981) (dicta), *rev'd in part*, 731 F.2d 1423 (9th Cir.1984). However, the overwhelming majority of cases have held that federal civil rights claims *are* removable. *Langford v. Gates*, 610 F.Supp. 120, 122 (C.D.Cal.1985); *see also, Cook v. Robinson*, 612 F.Supp. 187, 188–89 (E.D.Va. 1985); *Baldi v. City of Philadelphia*, 609 F.Supp. 162, 168 (E.D.Pa.1985); *Routh v. City of Parkville*, 580 F.Supp. 876, 877 (W.D.Mo.1984); *Sweeney v. Abramovitz*, 449 F.Supp. 213, 214–16 (D.Conn.1978).

 Indeed, the Party's rationale would preclude removal under *any* statute which creates concurrent jurisdiction.[8] Though it may be that such an extreme position has never been directly argued to it, the Ninth Circuit has at least impliedly rejected this argument in the many instances in which it has accepted jurisdiction in cases which had been removed pursuant to statutes conferring concurrent jurisdiction on the federal courts. *See, e.g., Lafferty v. Solar Turbines Int'l.*, 666 F.2d 408 (9th Cir.1982) (ERISA). In fact, as Mercier points out, until recently,[9] removal under 28 U.S.C.

§ 1441 (1973 and 1986 Supp.) was impossible *unless* there was concurrent jurisdiction in both the state and federal courts. *Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922); *Sorosky v. Burroughs Corp.*, 798 F.2d 1274, 1278–79 (9th Cir.1986); *Clorox Co. v. United States District Court*, 779 F.2d 517, 521 (9th Cir. 1985). The Party's argument would render § 1441, at least before the 1986 amendment, a nullity. (It would be impossible to remove if the state court had jurisdiction, and it would be impossible to remove if the state court didn't have jurisdiction.) This Court rejects the Party's interpretation, and holds that federal civil rights claims originally filed in state court are removable under 28 U.S.C. § 1441.

## III. Mercier's Motion to Dismiss or Strike

### A. The § 1983 Claim

 The Party's theory on its § 1983 claim is that Mercier was masquerading as the California Republican party, and since the California Republican party is heavily regulated, it is essentially an entity of the state government. In other words, by masquerading as the state party, Mercier was acting "under color of state law" for the purposes of § 1983. The argument fails at two points. First, masquerading as a state official is not "state action" for the purposes of § 1983. Section 1983 only covers actions involving persons who are in fact governmental officials. *See, e.g., Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 716–17 (9th Cir.), *cert. denied*, 454 U.S. 967, 102 S.Ct. 510, 70 L.Ed.2d 383 (1981) (private group wearing

---

**7.** It is certainly true that § 1983 actions can be brought in state courts. *See Brown v. Pitchess*, 13 Cal.3d 518, 119 Cal.Rptr. 204, 531 P.2d 772 (1975).

**8.** At oral argument, the Party retreated from this position, and argued that removal should only be precluded for federal civil rights actions. The Party offered no explanation for this distinction, and although *Young* provides some support for it, all of the other cases to have

considered the argument appear to have rejected it.

**9.** P.L. No. 99–336 § 3(a) (June 19, 1986), codified at 28 U.S.C. § 1441(e), overrules the old *Lambert* doctrine and allows removal of exclusive federal jurisdiction cases erroneously filed in state court after June 19, 1986, notwithstanding the state court's lack of jurisdiction over the case in the first place.

uniforms falsely indicating affiliation with county sheriff does not act under color of state law). Private individuals can be sued under § 1983 when they conspire with government officials, but there is no such allegation in this case. Second, heavy state regulation of private action does not turn that action into state action. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 358, 95 S.Ct. 449, 457, 42 L.Ed.2d 477 (1974) (heavily regulated utility monopoly's actions not state action). Though heavily regulated, the California Republican party is not part of the state government, and its actions are not state actions.[10]

■ The Party also claims that this case is analogous to the primary election cases which have held that in some circumstances, the actions of a political party can be state action. *McIntosh v. White*, 582 F.Supp. 1244, 1249 (E.D.Ark.1984) (but also holding political party to be purely private in its campaigning function), *rev'd in part*, 766 F.2d 337 (8th Cir.1985); *Smith v. Allwright*, 321 U.S. 649, 663–64, 64 S.Ct. 757, 764–65, 88 L.Ed. 987 (1944) (state political party's setting of party membership requirements for participation in primary election is state action); *Terry v. Adams*, 345 U.S. 461, 469–70, 73 S.Ct. 809, 813–14, 97 L.Ed. 1152 (1953) (primary election conducted entirely privately by political organization is still state action). However, these cases are distinguishable. Conducting a primary election is a governmental function, which remains state action even if the government delegates the function to a private group. *Cf. Marsh v. Alabama*, 326 U.S. 501, 507–09, 66 S.Ct. 276, 279–80, 90 L.Ed. 265 (1946) (running private "company town" is governmental function, and constitutes state action). The primary election cases do not hold that a political party is part of the state, or that any action by a political party other than conducting an election is state action. Nor do they hold that campaigning in a primary election constitutes state action. The primary election

cases merely hold that conducting an election is a governmental function and constitutes state action, no matter who actually conducts the election. In any case, this line of authority does not help the Party, because defendants were not a political party; at most, they were imitating a political party. *Cf. Canlis, supra.*

■ The Party also contends that certain other aspects of Mercier's conduct could give rise to a finding of state action. These contentions are groundless. As discussed above, state regulation of Mercier's activities does not make these activities state action. *Metropolitan Edison*, 419 U.S. at 358, 95 S.Ct. at 457. Government subsidies, in the form of tax preferences and discount mailing rates, do not turn private action into state action. *Rendell-Baker v. Kohn*, 457 U.S. 830, 832–37, 102 S.Ct. 2764, 2766–69, 73 L.Ed.2d 418 (1982) (private school's actions not state action, though public funds accounted for over ninety percent of school budget). The Party also cites a number of cases which have held that interfering with a person's right to vote might state a § 1983 violation. *See, e.g., Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) (population imbalances in electoral districts). In each case, the conduct at issue involved at least in part the actions of state officials (county clerks, boards of election, secretaries of state), not purely private conduct. The most closely analogous case is *Smith v. Cherry*, 489 F.2d 1098 (7th Cir.1973), *cert. denied*, 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974), where political officials of one party allegedly put a sham candidate on the ballot so as to confuse and mislead the voters. However, even this analogy fails. *Smith* involved "deception *on the face of the ballot*," not deception by private individuals in a campaign mailing. *Id.* at 1102 (emphasis supplied). The creation of a ballot is of course state action, of

10. To the extent that *Spinosa v. Republican County Central Cmte. of San Francisco*, 185 Cal. App.3d 44, 214 Cal.Rptr. 593, *review granted*, —— Cal.3d ——, 216 Cal.Rptr. 923, 703 P.2d 395 (1985) (party committees "are creatures of statute"), holds to the contrary, it was overruled by *Eu*, 792 F.2d at 810–11 (political parties are private associations).

a sort missing in this case.[11] The Party has not alleged state action of the kind necessary to establish a § 1983 violation. There is no reasonable likelihood that granting the Party discovery on this claim would uncover any evidence that state action is involved in the controversy now before the Court. Therefore, this cause of action is dismissed.

## B. *The § 1985(3) Claim*

Under certain circumstances, claims under 42 U.S.C. § 1985(3) can reach purely private conspiracies to violate civil rights. *Griffin v. Breckenridge*, 403 U.S. 88, 101–02, 91 S.Ct. 1790, 1797–98, 29 L.Ed.2d 338 (1971). However, § 1985(3) does not itself create substantive rights; plaintiffs must state a violation of some substantive federal or state civil rights statute or constitutional provision. *Great American Federal Savings & Loan Assn. v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). Further, plaintiffs must claim an invidious class-based animus leading to the deprivation of civil rights. *United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 838, 103 S.Ct. 3352, 3361, 77 L.Ed.2d 1049 (1983). Where the claimed violation of civil rights involves a right secured against interference only by the state, a § 1985(3) violation is proven only if "the State is involved in the conspiracy or ... the aim of the conspiracy is to influence the activity of the State." *Id.* at 830, 103 S.Ct. at 3357. For all of the above reasons, Mercier urges that the Party's claim be dismissed.

### (1) *Violation of a Substantive Statute*

The Reconstruction Congress which originally passed the Ku Klux Klan Act of which § 1985(3) is a part did not want that statute to be interpreted as a general federal tort law. The debates preceding passage of the Act indicate that Congress had both constitutional and policy objections to such a result.[12] In order to effectuate this intent, the Supreme Court in *Novotny* held that § 1985(3) only remedies violations of "the *equal* protection of the laws, or of *equal* privileges and immunities under the laws[.]" 442 U.S. at 372, 99 S.Ct. at 2349 (emphasis added). The Party urges that Cal.Elec.Code § 11703 is such a provision guaranteeing equal rights, and a violation of § 11703 states a cause of action under § 1985(3).

The Supreme Court in *Scott* left open the question of whether a deprivation of equal rights guaranteed under state law could ever state a violation of § 1985(3). *Scott*, 463 U.S. at 833–34, 103 S.Ct. at 3358–59.[13] This Court need not answer this question, because it is clear that Cal. Elec.Code § 11703 is not such a state law. The chapter of the Elections Code of which § 11703 is a part provides comprehensive regulation of the activities of political parties. It is not and does not purport to be a statute guaranteeing anyone's civil rights.[14] Nor has the Party pointed to any other state or federal statute concerning equal rights which Mercier might have violated. Since § 1985(3) does not create any

**11.** In any case, it is not at all clear that *Smith* is good law in its own circuit. *See Grimes v. Smith*, 776 F.2d 1359, 1366 n. 11 (7th Cir.1985), which on concededly identical facts found too little state action to ground a claim under 42 U.S.C. § 1985(3).

**12.** The legislative history of § 1985(3) is discussed extensively in both *Griffin*, 403 U.S. at 99–102, 91 S.Ct. at 1796–98, and *Scott*, 463 U.S. at 834–39, 103 S.Ct. at 3359–62 (majority opinion), and 841–47, 103 S.Ct. at 3362–66 (Blackman, J., dissenting). *See also* Gormley, *Private Conspiracies and the Constitution: A Modern Vision of 42 U.S.C. Section 1985(3)*, 64 Tex.L. Rev. 527 (1985); Comment, *A Construction of*

*Section 1985(c) in Light of Its Original Purpose*, 46 U.Chi.L.Rev. 402 (1979); Comment, *Private Conspiracies to Violate Civil Rights*, 90 Harv.L. Rev. 1721 (1977).

**13.** Compare *Novotny*, 442 U.S. at 379–80, 99 S.Ct. at 2352–53 (Powell, J., concurring) (§ 1985(3) is limited to conspiracies to violate fundamental rights guaranteed by the federal constitution).

**14.** The Party does not and cannot claim that § 11703 discriminates against it in comparison to other political parties, or in comparison to Mercier.

independent, substantive rights for the Party, *Novotny,* 442 U.S. at 372, 99 S.Ct. at 2349, and the Party has not identified any statutory or constitutional provision relating to civil rights that Mercier has violated, it follows that the Party's § 1985(3) claim must be dismissed.

### (2) *Class-Based Animus*

The *Scott* court specifically left open the question of whether politically-motivated discrimination could ever state a cause of action under § 1985(3). *Scott,* 463 U.S. at 835–37, 103 S.Ct. at 3359–61. The *Scott* court did note that the legislative history of this section provides extensive support for the proposition that the section was intended to prevent private conspiracies against individuals based on their political affiliation. *Id.* at 836–38, 103 S.Ct. at 3360–62. However, the *Scott* decision does provide some guidance to the Court when considering political animus cases. The court stated:

> [W]e find difficult the question whether § 1985(3) provide[s] a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means. To accede to that view would go far toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role that the courts should not be quick to assume.

If respondents' submission were accepted, the proscription of § 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another political party by encouraging the heckling of its rival's speakers and the disruption of the rival's meetings.

*Id.* at 836, 103 S.Ct. at 3360.

■■■■ This Court need not reach the question of whether politically-motivated animus can ever state a violation of § 1985(3).[15] Such an animus is actionable, if ever, only when it amounts to an interference with the constitutionally-protected right to vote. *Cf. Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The strongest case for allowing a § 1985(3) cause of action against a private conspiracy motivated by political animus would be where a private group tried to physically restrain an opposing political group from reaching the polls, or tried to coerce the opposing group's votes when at the polls, or tried to destroy the opposing group's ballots after the polling.

Despite the Party's contentions to the contrary, this is not a case involving an interference with the right to vote. This is a case involving allegedly deceptive campaign tactics. The Party does not claim that any of its members were denied their

---

**15.** The courts are in considerable disarray on this issue. A post-*Scott* Supreme Court case under a closely-related statute held that discrimination against a political party and its members is actionable under federal civil rights laws. *Davis v. Bandemer,* —— U.S. ——, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986). *Davis* was decided under 28 U.S.C. § 2284 (1978 and 1986 Supp.), but like § 1985(3), § 2284 is a purely procedural and remedial statute, not one that creates substantive rights. *Davis* therefore presumably indicates the existence of a constitutionally-based right to be free from politically-motivated discrimination. *Cf. Republican Party of Connecticut v. Tashjian,* 770 F.2d 265, 270 (2d Cir.1985), *aff'd,* —— U.S. ——, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986) (finding actionable state government's interference with associational rights of political party). The pre-*Davis* cases were split on the issue reserved in *Scott.* Compare, *e.g., Stevens v. Rifkin,* 608 F.Supp. 710, 722–25 (N.D.Cal.

1984), and *Keating v. Carey,* 706 F.2d 377 (2d Cir.1983), holding such an animus actionable, with *Hobson v. Wilson,* 737 F.2d 1 (D.C.Cir. 1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985), reserving the issue, and with *Grimes v. Smith,* 776 F.2d 1359 (7th Cir. 1985), and *Harrison v. KVAT Food Management Co.,* 766 F.2d 155 (4th Cir.1985), holding such an animus not actionable. The Ninth Circuit has never directly held on this issue, *see Schultz v. Sundberg,* 759 F.2d 714, 718 (9th Cir.1985) (§ 1985(3) does not apply to purely transitory coalitions of elected officials); *Desantis v. Pacific Tel. & Tel. Co.,* 608 F.2d 327, 333 (9th Cir. 1979), but in *dicta* in a pre-*Davis* case, suggested that such claims might not be actionable. *Gibson v. United States,* 781 F.2d 1334, 1341 (9th Cir.1986). *But see Eu,* 792 F.2d at 820 (finding actionable under § 1983 state government's interference with associational rights of political parties).

right to cast their ballots. Rather, it claims that some of its members may have been persuaded to vote against their true interests, or at least to vote differently than they otherwise would have. This claim of deceptive and unfair campaigning is similar to the claim of disruptive heckling which *Scott* indicated should not be actionable in federal court under § 1985(3).

 This Court therefore holds that deceptive campaigning does not rise to the level of an interference with the right to vote. The Court also holds that a claim of politically-motivated animus only states a § 1985(3) violation, if ever, when it states an interference with some fundamental right such as the right to vote.[16] The Party provides absolutely no precedent for its claim that deceptive campaigning, without more, states a violation of any fundamental right.[17] In short, though there may be cases in which politically-motivated animus states a federal civil rights claim, this is not such a case. Because the Party cannot establish the requisite class-based animus, the Party's § 1985(3) claim must be dismissed.[18]

### C. *The California Elections Code § 11703 Violation*

Since this Court has dismissed both of the Party's federal claims, it must determine the disposition of the Party's remaining state law claim against Mercier.[19]

Since this Court has had this case only for a short time, and in view of the strong policy in favor of having state courts decide state law issues, this Court declines Mercier's invitation to retain pendent jurisdiction pursuant to *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *See, e.g., Wren v. Sletten Constr. Co.,* 654 F.2d 529, 536 (9th Cir.1981) (where federal claims dismissed before trial, pendent state law claims normally should be remanded to state court). Therefore, without expressing any opinion as to the merits of Mercier's motion to dismiss or strike damages with respect to the Party's § 11703 claim, this Court orders that that claim be remanded to state court.

Therefore, IT IS ORDERED that,

1. Plaintiffs' motion to remand without reaching the merits is denied.

2. Defendants' motion to dismiss counts two and three of the first amended complaint is granted with prejudice.

3. Count one of plaintiffs' first amended complaint is remanded to the Superior Court of the State of California in and for the County of Los Angeles.

**16.** A heightened standard for the establishment of a prima facie case of political discrimination under § 1985(3) is consistent as well with *Davis,* 106 S.Ct. at 2811, which created such a heightened standard for cases concerning political discrimination in reapportionment.

**17.** As Mercier points out, for the federal courts to start evaluating campaign materials for deceptiveness would raise concerns close to the heart of the First Amendment, and this is an additional reason to decline the Party's invitation to chart a course which would require the courts to conduct such evaluations.

**18.** This is an alternative ground for dismissal of the § 1985(3) claim, in addition to the lack of a violation of a substantive equal rights statute ground discussed in the previous section. In light of these grounds for dismissal of this claim, the Court need not reach and expresses no opinion on Mercier's contention that an interference with the right to vote only states a

§ 1985(3) violation if it involves state action. Compare *Scott,* 463 U.S. at 830, 103 S.Ct. at 3357 (state action necessary for First Amendment violation), with *Griffin,* 403 U.S. at 105–06, 91 S.Ct. at 1799–1801 (purely private action states violation of Thirteenth Amendment and right to travel). Nor must the Court reach the Party's contention that affecting the result of primary and proposition elections constitutes "influenc[ing] the activity of the State" and is therefore state action. *Scott,* 463 U.S. at 830, 103 S.Ct. at 3357. *See also, United States v. Classic,* 313 U.S. 299, 315, 61 S.Ct. 1031, 1037, 85 L.Ed. 1368 (1941).

**19.** In view of this Court's disposition of the § 1983 and § 1985(3) claim, there is no reasonable likelihood that the Party will be able to amend its complaint to state a viable federal claim on these facts. Therefore, this Court need not retain jurisdiction over this case so that the Party can amend its pleadings.