5 F.3d 539
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 PIONEER LUMBER TREATING, INC., Pioneer Lumber & Treating
Company of Kawaihae, Inc., and William Legg, Plaintiffs,
and
Mark R. Thomason, Appellant.
v.
Burr COX, Wayne Deluz, Richard Root, Jefri Metheany, D.C.,
Benton Bolos, James Kelly, Samuel Wana, County of Hawaii,
Guy Paul, William Schuman, Cindy Bell, Lon Tatum, Judith
McKinney, Lori Campbell, Mark Willman, Ralph Bateman, Robert
Russell, Rodney Tamura, and Richard Betts, Defendants/Appellees.
In re PIONEER LUMBER TREATING, INC., Debtor.
Mark R. THOMASON, Appellant,
v.
Wayne DELUZ, Office of the United States Trustee, Benton
Bolos, William Schuman, Richard Betts, Mark
Willman, Lori Campbell, Creditors/Appellees.
 Nos. 92-15236, 92-15279.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 18, 1993.*
Decided Sept. 22, 1993.
 
 Appeal from the United States District Court, for the District of Hawaii, D.C. Nos. CV-89-00511-DAE, CV-91-00622-MP; Martin Pence, and David A. Ezra, Judges Presiding.
 D.Hawaii
 AFFIRMED.
 Before: NORRIS and RYMER, Circuit Judges, and TAYLOR,** District Judge.
 MEMORANDUM***
 Appellant Mark Thomason asks this Court to review the propriety of sanctions against him under Bankruptcy Rule 9011 for bad faith in filing a voluntary bankruptcy petition, as well as Rule 11 sanctions against him individually based on filing a complaint in a federal civil case. We AFFIRM.[1]
 I. BACKGROUND
 The facts span the course of four years and include conduct in state, federal, and bankruptcy proceedings.
 In 1988 a civil action was brought against Pioneer Lumber Treating, Inc., Pioneer Lumber and Treating Company of Kawaihae, Inc. (collectively "Pioneer") and William Legg, Pioneer's president and principal shareholder, in the Third Circuit Court, State of Hawaii. After several delays, trial was set for April 30, 1990.
 In the meantime, in July 1989, Pioneer and Legg filed in the Federal District Court a complaint against twenty-one defendants alleging various violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), federal civil rights laws, negligence, and unjust enrichment. Pioneer and Legg's allegations against the defendants included creating false invoices, trading stolen lumber or building materials for narcotics or to pay gambling debts, organizing a kick-back scheme, conspiring to cover up crimes against the plaintiffs, business and personal threats, and suppression of evidence.
 In December 1989, the district court granted with leave to amend the motion of five of the twenty-one defendants to dismiss the Complaint and for Rule 11 sanctions against Thomason for having filed a frivolous complaint. The court also ordered plaintiff to file a RICO case statement, specifying the RICO claim. The district judge referred the calculation of the sanction amount to a magistrate judge.[2]
 Pioneer filed a First Amended Complaint in January 1990, but failed to comply with the court's order to file a RICO case statement. Defendants' motions to dismiss soon followed, and were eventually calendared for May 7, 1990.
 With the state court trial set for April 30, 1990, and the federal case dismissal motions set for May 7, 1990, Thomason tried to delay the state case. A few days before the state court trial, he requested another continuance. Ernest Gianotti, plaintiff's attorney, declined because his client was already enroute from the mainland and could not be contacted. Then, shortly before 9:00 a.m. on the day of the state court trial, Thomason called Gianotti at the courthouse and told him that a bankruptcy petition already had been filed on behalf of Pioneer and Legg. As a result of the filing, the state court action was continued. Records of the bankruptcy court, however, later revealed that the bankruptcy petition was filed one hour later than represented by Thomason to Gianotti, and the Notice of Automatic Stay eventually filed in the state court action was signed by Thomason three days before trial.
 Although attorney Thomason filed the voluntary bankruptcy petition on April 30, 1990, he withdrew as counsel for debtor Pioneer the following day, and attorney Steven Guttman entered his appearance as counsel for the debtor.
 In July 1990, (effective June 1, 1990), the bankruptcy court modified the stay to allow the various defendants in the federal action to pursue their motions to dismiss the First Amended Complaint.
 At a September 1990 hearing to show cause why the bankruptcy should not be dismissed, Pioneer willingly agreed to dismiss the petition. The bankruptcy court dismissed with prejudice, but retained jurisdiction over the case in the event the creditors wanted to file a motion for bad faith and punitive damages.
 In May 1991, the bankruptcy court found bad faith on the part of Thomason and the debtor for filing the bankruptcy petition primarily to delay pending proceedings in both the state and federal courts, for Thomason's misrepresentation to Gianotti that a bankruptcy petition had been filed when it had not, and for lack of intent to effectuate a reorganization. As sanctions to both Thomason and the debtor, jointly and severally, the court granted reasonable attorney's fees and costs to all counsel in the amount of $48,770.22. The federal district court affirmed in full the bankruptcy court's findings.
 In November 1991, the Magistrate Judge assessed sanctions in the federal court action of $19,530.74, and the district court adopted the Magistrate Judge's Report and Recommendation.
 Thomason now appeals both rulings.[3]
 II. DISCUSSION
 The Supreme Court has directed a deferential standard in reviewing a district court's imposition of Rule 11 sanctions. See Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 401-405, 110 S.Ct. 2447, 2457-61, 110 L.Ed.2d 359, 379-82 (1990). "[A]n appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination. A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. at 405.
 Federal Rule of Civil Procedure 11 provides in part that "[t]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the [document]" and "that to the best of the signer's knowledge ... formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Fed.R.Civ.P. 11. In short, Rule 11 addresses the problems of frivolous filings and abuse of judicial procedures as a tool for harassment. Stewart v. American Int'l Oil & Gas Co., 845 F.2d 196, 201 (9th Cir.1988); Zaldivar v. City of Los Angeles, 780 F.2d 823, 830 (9th Cir.1986).
 A filing is frivolous under Rule 11 if it is unreasonable when viewed from the perspective of a competent attorney admitted to practice before the district court. See Zaldivar, 780 F.2d at 831. Therefore, "[t]he pleader, at a minimum, must have a 'good faith argument' for his or her view of what the law is, or should be," attained after reasonable inquiry. Id. Sanctions under Rule 11 for signing a frivolous pleading are not limited to instances in which a pleading as a whole is frivolous, or of a harassing nature. Rather, sanctions may be imposed for improper or unwarranted allegations even though at least one non-frivolous claim has been plead if an attorney has not conducted a "reasonable inquiry" under the circumstances of a case. Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362-65 (9th Cir.1990). "A district court confronted with solid evidence of a pleading's frivolousness may in circumstances that warrant it infer that it was filed for an improper purpose." Id. at 1365.
 The bankruptcy equivalent of Rule 11, Rule 9011 of the Federal Rules of Bankruptcy Procedure, empowers bankruptcy courts to impose sanctions on the signer of a paper or the party represented if the paper is frivolous or filed for an improper purpose. In re Grantham Bros., 922 F.2d 1438, 1441 (9th Cir.), cert. denied, 112 S.Ct. 94 (1991). Under Rule 9011(a), as under Rule 11, a filing is considered frivolous if it is both baseless and made without a reasonable and competent inquiry. Id. at 1442. An abuse of discretion standard is applied. Id. at 1441.
 The trial courts concluded that a competent attorney, after reasonable inquiry, would not have filed these pleadings. This court cannot say either of those rulings was an abuse of discretion.
 A. The Federal Action
 1. The propriety of sanctions.
 The district court correctly observed that, in order to state a civil RICO claim, a plaintiff must allege that it suffered (1) an injury to its business or property because the defendant, (2) while involved in one or more enumerated relationships with an enterprise, (3) engaged in a pattern of racketeering activity or collected an unlawful debt. 18 U.S.C. Secs. 1961-1968. The district court noted in detail how Thomason's Complaint failed to allege a pattern of racketeering activity with sufficient particularity.
 Upon review of the complaint, this court finds no abuse of discretion in the district court's finding that a competent attorney, after reasonable inquiry, would not have pleaded the RICO claim in such a manner. Thomason's complaint was deficient in almost all requirements of pleading a RICO claim. This court can agree with the law journal quotation in Chapman & Cole v. Itel Container Int'l, 865 F.2d 676, 685 (5th Cir.), cert. denied, 493 U.S. 872 (1989): " 'Given the resulting proliferation of civil RICO claims and the potential for frivolous suits in search of treble damages, greater responsibility will be placed on the bar to inquire into the factual and legal bases of potential claims or defenses prior to bringing such suit or risk sanctions for failing to do so.' " (quoting Black & Magenheim, Using the RICO Act in Civil Cases, Houston Law., Oct. 1984, at 20, 24-25.
 In Count II of the complaint, Thomason alleged that the defendants violated the plaintiffs' civil rights under 42 U.S.C. Secs. 1985(2) and (3) and Sec. 1983. These claims are equally defective.
 To state a claim under section 1985, there "must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 348 (1971). A plaintiff who fails to allege a racial or class-based discrimination cannot state a claim under sections 1985(2) or (3). See Burns v. County of King, 883 F.2d 819, 821 (9th Cir.1989) (citing Bretz v. Kelman, 773 F.2d 1026, 1028 (9th Cir.1985) (en banc)). Conspicuously absent from the 1985 claims is any allegation of race or class-based discrimination. Plaintiffs also failed to allege that they are members of a class that suffers from invidious discrimination.[4]
 In order to state a claim under section 1983, a complaint must claim a right to recover under the Constitution or other federal laws and not be wholly insubstantial and frivolous. Kensington v. Roberts, 717 F.2d 1295, 1298 (9th Cir.1983). Here, the section 1983 cause of action failed to identify any violated constitutional right. This deficiency is fatal. Id. at 1300. Additionally, the claim was defective as to each of the named defendants: Plaintiff failed to allege that a policy, custom or practice of the County of Hawaii was the proximate cause of the plaintiffs' constitutional injury. Monnell v. Dept. of Social Serv., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Although the complaint alleged generally that Wanna and Kelly suppressed evidence during their investigation of the alleged crimes, no effort is made to articulate this as a constitutional violation. Plaintiffs' allegation that Paul "did nothing and refused to talk with Plaintiffs" when matters concerning the alleged suppression of evidence were brought to his "personal attention" was conclusory and failed to offer any basis for a constitutional deprivation of rights, and it failed to allege that Paul was personally responsible for a constitutional deprivation. See Schultz v. Baumgart, 738 F.2d 231, 238-39 (7th Cir.1984).
 2. Imposition of Sanctions.
 The district court concluded that the plaintiffs' complaint was frivolous. While it allowed Thomason leave to amend, the court reasoned that a competent attorney, after reasonable inquiry, would have identified the elements necessary to properly plead both RICO and civil rights claims before filing the complaint.
 The RICO claim ignored the requirements for pleading mail and wire fraud--requirements well-publicized in the Ninth Circuit and easily accessible to attorneys. The other allegations were conclusory and demonstrated a disregard for the substantive provisions of the statutes. The Ninth Circuit, as well as other circuits, has held that Rule 11 sanctions may be appropriate when a RICO complaint consists of conclusory or otherwise improper allegations. See Stitt v. Williams, 919 F.2d 516, 528 (9th Cir.1990). See also Avirgan v. Hull, 932 F.2d 1572, 1581-83 (11th Cir.1991), cert. denied, 112 S.Ct. 913 (1992) (sanctions exceeding $1 million against plaintiffs in civil RICO action).
 Pioneer's civil rights allegations were also frivolously deficient. The section 1985 claims failed to allege any race or class-based discrimination as required under that section, and the section 1983 claim was devoid of allegations raising a constitutional violation.
 Seeking to avoid sanctions, Thomason now concedes that, although the pleadings may not have been technically precise under prevailing case law, "they were sufficient to put the defendants on notice as to the claims against them." However, in this Circuit, when a RICO claimant alleges predicate acts of fraud, Fed.R.Civ.P. 9(b) applies fully to those allegations. See, e.g., Alan Neuman Prod., Inc. v. Albright, 862 F.2d 1388, 1392-93 (9th Cir.1988), cert. denied, 493 U.S. 858 (1989); Sun Savings & Loan Assoc. v. Dierdorff, 825 F.2d 187, 196 (9th Cir.1987). See also Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1402 (9th Cir.1986) (supporting particularized pleading requirement in RICO fraud allegations because "[a] company eager to weaken an offending competitor obeys no constraints when it strikes with the sword of [RICO]") (Kennedy, J., concurring).
 
 
 1
 Accordingly, the trial court's imposition of sanctions was not an abuse of discretion.[5]
 
 
 2
 3. Amount of Sanctions.
 
 
 3
 Thomason argues that the district court's adoption of the Magistrate's recommendation to impose $19,530.74 attorney's fees was error, citing In re Yagman, 796 F.2d 1165 (9th Cir.), amended, 803 F.2d 1085 (9th Cir.1986), cert. denied, 484 U.S. 963 (1987). Yagman held a sanctioning court "should at a minimum provide notice," take "prompt action" to assess sanctions during the course of the trial, issue an award that is "properly itemized" and objectively reasonable in terms of perceived misconduct, and, where appropriate, consider ability to pay. Id. at 1183-85.
 
 
 4
 The sanction award here has none of the defects present in Yagman. The magistrate judge did not use the "round figure" approach that was the basis for Yagman 's concern. In fact, rather than sanction Thomason's conduct based on his general performance over the course of the two-year trial (as was done in Yagman ), the district and magistrate judges noted that the sanctions "only relate[d] to the specific motion [dismissing Pioneer's original complaint] ... No other fees and costs are involved." This kind of award based on discrete sanctionable conduct is appropriate.
 
 
 5
 Thomason offers no showing that the fees and costs awarded the defense attorneys were unreasonable, and the text of the magistrate judge's Recommendation Order demonstrates the fee applications were closely scrutinized.[6]
 
 
 6
 Thomason's concern for duplicative fee requests based on overlapping filings by groups of the different defendants is baseless in the context of Thomason's complaint. The fees awarded to the nine different attorneys, representing fourteen of the defendants, is a reflection of the weakness of Thomason's pleadings and the seriousness of his allegations involving multi-million dollar liability. See Unioil, Inc. v. E.F. Hutton & Co., 809 F.2d 548, 559 (9th Cir.1986), cert. denied, 484 U.S. 823 (1987).
 
 
 7
 Thomason briefed in full for the district court each of his current objections. The district court considered these arguments before entering its final order adopting the magistrate's recommendations. It stated: "After reviewing Thomason's objections, the court finds no reason to alter its previous order adopting the magistrate's recommendations." In view of the Ninth Circuit's policy of affording "broad discretion" to a district court's fee determination, Thomason has offered no persuasive basis to criticize the magistrate and district judges' sanctions determinations. See D'Emanuele v. Montgomery Ward & Co., 904 F.2d 1379, 1384-85 (9th Cir.1990).
 
 
 8
 Accordingly, the sanctions award of $19,530.74[7] is affirmed.
 
 
 9
 B. The Bankruptcy Action.
 
 
 10
 Thomason claims to be erroneous the bankruptcy and district court's findings that his Chapter 11 filing was frivolous and filed for an improper purpose. He also claims that the lower courts erred by relying on the testimony of Gianotti when Thomason never had an opportunity to testify in front of the sanctioning judge, by failing to allow Thomason to present an expert witness on the reasonableness of the Chapter 11 Petition, and by awarding excessive sanctions. Each of these contentions is without merit.
 
 
 11
 1. The Propriety of Sanctions.
 
 
 12
 a. The Finding The Chapter 11 Petition Was Frivolous.
 
 
 13
 Each of the findings supporting the conclusion of frivolousness was properly reached.
 
 
 14
 (1.) Thomason's Lack of Intent to Reorganize Pioneer.
 
 
 15
 Thomason maintains that, contrary to the lower courts' findings, his intent in filing the Chapter 11 Petition was to properly effectuate the reorganization of Pioneer. He argues that his strategy was to "spread out" Pioneer's ten existing lawsuits and generate cash flow from one of those suits to fund the others. He erroneously thinks this position is supported by In re King, 83 B.R. 843 (Bankr.M.D.Ga.1988) and In re Trina Assoc., 128 B.R. 858 (Bankr.E.D.N.Y.1991)). These cases are clear that any such strategy must be part of a bonafide attempt to reorganize. As noted in In re King, "[i]t is sound bankruptcy law that a Debtor may file a Chapter 11 petition in an attempt to delay creditors, without subjecting himself to Rule 11-type sanctions, as long as the Debtor also intends to make a legitimate effort at reorganization." In re King, 83 B.R. at 847 (emphasis added). Additionally, In re Trina Assoc. emphasized that seeking the protection of an automatic stay for the purpose of derailing other proceedings is inappropriate. See In re Trina Assoc., 128 B.R. at 872.
 
 
 16
 Thomason has not suggested any alternative purpose for filing the Chapter 11 Petition other than to freeze Pioneer's pending litigation. Conclusory protestations aside, the record lacks any evidence suggesting Thomason intended to effectuate a legitimate financial reorganization of Pioneer.
 
 
 17
 (2.) Debtor's Activity After the Lift-Stay Proceeding.
 
 
 18
 After reviewing the Record, both the bankruptcy and district courts concluded that the absence of activity by the Debtor after the stay was formally lifted in July 1990 implied that Thomason's bankruptcy filing was baseless.
 
 
 19
 Once the order lifting the stay was formally entered, the Debtor took no action to reorganize. Instead, when the bankruptcy court informed Debtor that the case would be dismissed if Debtor did not seek new counsel, the Debtor willingly agreed to dismiss the case. It was no abuse of discretion to infer this supported a finding of frivolousness.
 
 
 20
 (3.) Thomason's Failure to Secure Substitute Counsel.
 
 
 21
 Thomason argues his May 1990 withdrawal relieved him of any responsibility to find new counsel, and it would be "grossly unfair" to hold him accountable for finding new counsel after the bankruptcy court permitted him to withdraw.
 
 
 22
 However, the Record reflects that Thomason continued as counsel for Pioneer in the Federal Action until the court granted his motion to withdraw in August 1990. He also represented himself as "Special Counsel" for Pioneer in the bankruptcy proceedings even after his dismissal. "Special Counsel" Thomason's decision not to find substitute general counsel properly contributes to the conclusion Thomason filed the bankruptcy Petition for reasons other than to seek Pioneer's reorganization.
 
 
 23
 (4.) Thomason's Lack of Pre-filing Inquiry.
 
 
 24
 The lower courts found Thomason failed to conduct an adequate inquiry of Pioneer's financial position before filing the bankruptcy Petition, thereby reinforcing the suggestion that Thomason had no intent to effectuate a proper reorganization. Thomason argues the Record is to the contrary.
 
 
 25
 Thomason claims that before he filed the Petition, he met both with a bankruptcy "expert" to discuss whether Pioneer's filing for bankruptcy was appropriate, as well as with Pioneer's President and Secretary-Treasurer to discuss Pioneer's financial position. He states he represented Pioneer in a number of legal actions for the prior year and was thoroughly knowledgeable of Pioneer's financial situation.
 
 
 26
 Thomason's position is contradicted, however, by other evidence. For example, Thomason's original bankruptcy Petition stated the debtor's assets were $200,000 and liabilities were $150,000. Just one month after filing the Petition, Thomason submitted a Statement of Financial Affairs estimating assets of $2,496,881 and liabilities of $586,916--a significant departure. In an effort to explain the discrepancy, Thomason stated in an affidavit that he "was faced with the necessity to file the petition to stop the commencement of the [State Action] in Hilo," and that he "did not have time to thoroughly examine Debtor's records prior to the filing." This statement, however, is contrary to Thomason's present representation that, based on his experience in representing Pioneer, he was "well aware of the Debtor's financial condition and what was necessary to effectuate reorganization."
 
 
 27
 In addition, Thomason's stated plan of reorganization was to schedule out litigation whereby claims would be liquidated to finance further lawsuits. Yet, when Thomason filed the Petition, he stated that he placed "no known value" on such litigation.
 
 
 28
 The lower courts did not abuse their discretion in determining that Thomason failed to conduct a sufficient pre-filing inquiry of Pioneer's finances.
 
 
 29
 b. The Finding Thomason's Petition Was Filed For An Improper
 
 
 30
 Purpose.
 
 
 31
 Thomason claims the lower courts erred in finding his primary purpose was to freeze the State Action and delay the Federal Action. However, Thomason admitted as much in a November 1990 affidavit:
 
 
 32
 11. The immediate problems which triggered the filing of the Chapter 11 on April 30, 1990 was the fact that the Debtor was scheduled to go to trial in a case in Hilo ... on that day. The Debtor did not have counsel for the Clarke action and would have to default if the Chapter 11 was not filed....
 
 
 33
 * * *
 
 
 34
 13. Although the motion pending in the district court case [the Federal Action] which involved the moving parties was part of the cause for filing the Chapter 11, it was not the sole cause nor was it the immediate cause. The immediate cause was the pending commencement of trial in the state Clarke action.
 
 
 35
 In light of these admissions and the other evidence presented, the lower courts did not abuse their discretion in determining that Thomason filed the Petition for the improper purpose of freezing the State and Federal Actions. See In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1395 (11th Cir.1988); In re Indian Rocks Landscaping of Indian Rocks Beach, Inc., 77 B.R. 909 (Bankr.M.D.Fla.1987).
 
 
 36
 c. Testimony Before Two Different Judges.
 
 
 37
 Thomason observes that the only witnesses involved with the sanctions motion were himself and Gianotti. Thomason testified in December 1990 before visiting Judge MacDonald. Gianotti, attorney for plaintiff Clark in the State Action, testified as a witness for appellees before Bankruptcy Judge Chinen in April 1991. Hence, Thomason argues, Judge Chinen did not assess firsthand the credibility of Thomason's testimony, which, he says, violates Bankruptcy Rule 8013 ("due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses"). However, the bankruptcy judge noted at the final hearing that he twice read the transcript of Thomason's testimony. Further, the Record reveals Thomason never requested leave from Judge Chinen to testify before him at the April 1991 hearing, although the opposition papers filed by Thomason's counsel show Thomason was aware that Judge Chinen was to preside over the final hearing. Finally, the Record demonstrates that Judge Chinen had an opportunity to observe personally Thomason's demeanor when Thomason argued for the Debtor at the July 1990 lift-stay hearing.
 
 
 38
 Thomason also claims that Gianotti's testimony concerning Thomason's misrepresentations about the time the bankruptcy petition was filed should not have played a role in the sanctions decision because Thomason was not counsel for Pioneer in the state action and he only notified Gianotti of the stay as a professional courtesy. The Record is to the contrary, however: Both the district and bankruptcy courts noted that in the Notice of Automatic Stay Thomason represented himself as the debtor's counsel in the state action.[8]
 
 
 39
 d. Introduction of Expert Testimony.
 
 
 40
 Thomason argues that the bankruptcy and district courts erred by denying him the opportunity to present expert testimony from a "well-known Honolulu bankruptcy specialist" on the appropriateness of the Chapter 11 Petition and whether Thomason exercised due care and made a proper investigation before filing the petition. The lower courts did not err in denying Thomason's request. The admission of expert testimony is within the judicial discretion of the trial court, Rule 702, Federal Rules of Evidence, and experts generally are not permitted to testify as to how a court should rule on a given legal issue. See Brandt v. Schal Assoc., Inc., 121 F.R.D. 368, 369 (N.D.Ill.1988).
 
 
 41
 2. The Amount of Sanctions.
 
 
 42
 Thomason argues the amount of sanctions awarded by the lower courts was excessive and punitive. He argues, under In re Yagman, 796 F.2d 1165 (9th Cir.), amended, 803 F.2d 1085 (9th Cir.1986), cert. denied, 484 U.S. 963 (1987), the lower courts failed to consider such factors as his ability to pay, whether vindictiveness was involved in the bankruptcy filing, and the degree of frivolousness. However, Thomason had the opportunity to brief these issues to the lower courts, and he failed to do so. He now offers no explanation for his deficiency.
 
 
 43
 This court "need not consider a claim of error not raised below if the error might have been avoided had the issue been timely raised." Rainbow Power No. 44-18-04A v. Hawaii-Nevada Inv. Corp., 711 F.2d 902, 905 (9th Cir.1983).
 
 
 44
 Thomason ultimately contends, "The bottom line in this case is that if Appellant made a mistake it was the mistake of an inexperienced attorney in signing and filing a bankruptcy document." However, Bankruptcy Rule 9011 makes no exception for a "pure heart, empty head" defense. See Zaldivar v. City of Los Angeles, 780 F.2d 823, 829 (9th Cir.1986) (rejecting defense in Rule 11 context).
 
 
 45
 Accordingly, the sanctions award in the bankruptcy action is affirmed.
 
 III. DISPOSITION
 
 46
 These cases present an abuse of several courts' process, for the purpose of delay and harassment. The courts below did not abuse their discretion in ordering sanctions or in fixing their amount. The decisions appealed from are AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R 34-4
 
 
 **
 Honorble Gary L. Taylor, United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This court rejected a motion made by one of the appellees to formally consolidate these two cases for purposes of appeal. See Ninth Circuit Order dated June 11, 1992 (denying appellee DeLuz's motion to consolidate). However, because the cases are so intertwined, they are now decided in a single opinion
 
 
 [2]
 In February 1990, Appellant appealed the sanctions order to the Ninth Circuit. The appeal was eventually dismissed by this Court in July 1991 as premature and remanded to the district court to determine and enter the amount of Rule 11 sanctions
 
 
 [3]
 Some of the attorneys awarded fees by the magistrate and district judges have not responded to this appeal. Of the attorneys awarded fees, the following are represented in this appeal with filed briefs: Egesdal (for defendants Schuman and Betts); Konishi (for Metheany, D.C.); Lee Loy (for Bolos); Peterson (for Campbell and Willman); Christensen (for County of Hawaii, Paul, Wana, and Kelly); and the Kidani firm (for DeLuz)
 No briefs were filed representing the interests of attorneys: McHenry (awarded $922.50; for defendant Tatum); Tamura (awarded $68.63; defendant pro se); and Yamada (awarded $718.75; for Bateman). Their failure to file briefs does not prevent their prevailing on this appeal. Teamsters, Chauffeurs, Warehousemen, et al. v. Billington, 402 F.2d 510 (9th Cir.1968).
 
 
 [4]
 Thomason argues "there is case law holding that other types of discrimination, such as politically-motivated discrimination, can state a cause of action under Sec. 1985(3)," erroneously relying on California Republican Party v. Mercier, 652 F.Supp. 928 (C.D.Cal.1986). Mercier noted in dicta that "a claim of politically-motivated animus only states a section 1983(3) violation, if ever, when it states an interference with some fundamental right, such as the right to vote." Id. at 937. Thomason's civil rights claims fail to state any such fundamental right
 
 
 [5]
 The district court noted that Thomason's conduct did not mitigate the deficiencies in the pleadings. The court observed that Thomason was dilatory in filing an opposition to the motion to dismiss, and the record reveals similar deficiencies. See, e.g., Plaintiffs' Opposition to Motion to Dismiss dated Jan. 10, 1990, at NR 67 (filed four weeks late under Hawaii Local Rules)
 
 
 [6]
 See, e.g., Recommendation Order at 34; SER 3:3-4 (excluding, for example, "travel time" from the fee requests and disallowing costs associated with computer research)
 
 
 [7]
 Thomason appeals $891.75 fees and costs supposedly awarded to Patricia McHenry on behalf of defendant Lon Tatum, as well as $1,322.18 supposedly awarded to John Adams on behalf of defendant Rodney Tamura. The record does not reflect that either the magistrate or district judge made such awards. See Magistrate Judge's Report and Recommendation Regarding Attorney's Fees dated Nov. 22, 1991, at SER 1-4
 
 
 [8]
 Also, in front of visiting Judge MacDonald, Thomason suggested that he played a role in the state action. See TRE 47:16-19. Thomason responding to a question on his filing of the Petition: "It was kind of a scene of chaos because we had a trial starting. We were about to start out many thousands down from where we ought to be just because of a half hour to get this thing signed." (emphasis added)