**In the Matter of Paul M. KING, Debtor.**

**In the Matter of TV TEMPO, INC., Debtor.**

**Bankruptcy Nos. 87–30201, 87–30202.**

United States Bankruptcy Court,
M.D. Georgia,
Athens Division.

March 4, 1988.

---

Henry L. Young, Jr., Atlanta, Ga., for M. Usman Mirza and Melora P. Mirza.

Ernest V. Harris, Athens, Ga., for debtors.

## MEMORANDUM OPINION ON MOTIONS FOR SANCTIONS

ROBERT F. HERSHNER, Jr., Chief Judge.

### STATEMENT OF THE CASE

On May 8, 1987, TV Tempo, Inc., Debtor, and Paul M. King, Debtor, each filed a separate petition for relief under Chapter 11 of the Bankruptcy Code. M. Usman Mirza and Melora P. Mirza, Movants, were listed in each case as unsecured creditors holding a disputed claim in the amount of $1,200,000. Movants' claims were being asserted in a civil suit filed in the 288th Judicial District, Bexar County, Texas, in which both Debtors were named as defend-

ants. The Texas litigation was pending at the time Debtors filed their petitions for relief in bankruptcy.

On August 3, 1987, TV Tempo and Mr. King filed motions to dismiss their respective Chapter 11 cases. Movants filed a response to each motion on August 26, 1987, however, neither of Movants' responses objected to the dismissal of the Chapter 11 cases. Each response contained a motion for sanctions under Bankruptcy Rule 9011.[1] Since no objections were filed to the motions to dismiss, the Court dismissed each of the Chapter 11 cases on August 27, 1987. The Court retained jurisdiction in each of the cases to rule on Movants' requests for sanctions.

The motions for sanctions came on for hearing on October 29, 1987. By agreement of the parties, the hearings were consolidated. The Court, having considered the evidence and the arguments of counsel, now publishes its findings of fact and conclusions of law.

### FINDINGS OF FACT

TV Tempo, Inc. is a Georgia corporation that sells franchises for the marketing of a weekly television programming publication. TV Tempo operates on a national level. Paul M. King is the president of TV Tempo and owns eighty percent of the TV Tempo stock.

Movants were franchisees of TV Tempo. A dispute arose out of the franchise arrangement, and Movants filed a civil suit against TV Tempo, Mr. King, and Mike Baker[2] in the 288th Judicial District of Bexar County, Texas (Texas suit). The Texas suit, after lengthy delays, was finally set to be tried on May 11, 1987, approximately three years after the filing of the initial complaint.

TV Tempo and Mr. King had each been represented in the Texas suit by two law

firms during the three years in which the Texas litigation was pending. Each of these firms had withdrawn from the case.[3] Mr. Baker testified that the second law firm retained withdrew from the case two or three weeks before the May 11 trial date. Mr. King testified that attempts were made to obtain other Texas attorneys to represent himself and TV Tempo, but the attempts were unsuccessful. Apparently, no Texas law firm would represent TV Tempo and Mr. King in court on less than sixty days notice.[4] Thus, on Friday, May 8, 1987, TV Tempo and Mr. King were without legal representation in a case that was to be tried on Monday, May 11, 1987.

Mr. Baker was in Texas on May 8, 1987, evidently in an effort to obtain representation for TV Tempo and Mr. King. Mr. Baker testified that on this date, Mr. Linnarty, a Texas attorney, advised him that TV Tempo should file bankruptcy in order to stay the Texas suit. Mr. Baker and Mr. Linnarty relayed this information to Mr. King. Mr. King then consulted Mr. James Hudson and Mr. Ernest Harris, both Georgia attorneys, about the possibility of filing bankruptcy. After discussing the effects of filing bankruptcy with Mr. Harris, Mr. King and TV Tempo each filed a petition for relief under Chapter 11.

As a result of the filing, the Texas litigation was stayed. On July 28, 1987, Movants filed a "Motion to Abstain or for Relief from Automatic Stay" in each of the Chapter 11 cases. Before a hearing could be held on these motions, TV Tempo and Mr. King each filed a motion to dismiss their respective Chapter 11 cases. These motions were filed on August 3, 1987, eighty-eight days after the cases were filed.

Mr. King testified that TV Tempo had suffered a serious decline in business after filing for Chapter 11 relief. Mr. King stat-

---

**1.** R.Bankr.P. 9011.

**2.** Mr. Baker was the vice president and a shareholder of TV Tempo when the Texas suit was filed. Mr. Baker was later dismissed as a defendant in the Texas suit.

**3.** Apparently, each of the law firms representing TV Tempo and Mr. King had withdrawn due to a dispute over attorney's fees.

**4.** One Texas firm did agree to represent Mr. King and TV Tempo. Mr. King testified that this firm later refused the case after reviewing the file.

ed that following the Chapter 11 filing, some franchisees refused to pay royalties to TV Tempo and that TV Tempo had lost franchises and employees as a result of the bankruptcy case. Mr. King testified that TV Tempo could not continue to operate within the Chapter 11 framework, therefore it was necessary to dismiss the corporate Chapter 11. Mr. King testified that he sought to dismiss his individual Chapter 11 case because it had been filed simultaneously with the TV Tempo Chapter 11 case and therefore it "made sense" to dismiss the cases together. Mr. King further testified that if he had not dismissed his individual Chapter 11 case, the Texas suit would have been further delayed.

No objections to the motions to dismiss were filed,[5] therefore the Court granted the motions on August 27, 1987. The Court retained jurisdiction, however, to rule on the motions for sanctions filed by Movants on August 26, 1987.

## CONCLUSIONS OF LAW

Bankruptcy Rule 9011(a) requires that a bankruptcy petition be signed by an attorney or party.[6] The signature of the attorney or party constitutes a certification that the petition is "grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harrass [sic], to cause delay, or to increase the cost of litigation." R.Bankr.P. 9011(a). Rule 9011(a) further provides that if a court determines that a petition has been signed in violation of Rule 9011, then the court shall impose sanctions on the person who signed it or on the represented party. The text of Rule 9011 follows Rule 11 of the Federal Rules of Civil Procedure,[7] modifying Rule 11 where necessary to make the text appropriate for bankruptcy cases. Thus, the legislative history of Rule 11 and cases interpreting Rule 11 may provide this Court

with guidance in deciding the present motions.

First, the Court notes that although Rule 9011 allows sanctions to be imposed on attorneys and parties, Movants have only requested that the Court impose sanctions on Debtors. Movants do not seek to have the Court impose sanctions on Debtors' attorney. Rule 9011 allows a court to impose sanctions on its own initiative, however the Court finds no reason to consider imposing sanctions upon Debtors' attorney since Movants do not make that request. Therefore, the Court will restrict the scope of its opinion to an analysis of whether sanctions should be imposed on Debtors.

Persons facing possible discipline under Rule 9011 are subject to the protections of the Due Process Clause of the Fifth Amendment. *See Donaldson v. Clark*, 819 F.2d 1551, 1558 (11th Cir.1987). This right requires an application of familiar principles of due process: the time and content of the notice and the nature of the hearing will depend upon an evaluation of all of the circumstances and an appropriate accommodation of the competing interests involved. *Id.* When sanctions are proposed to be imposed on a debtor, due process demands more specific notice because the debtor is not likely to be aware of the existence of Rule 9011 and therefore should be given greater opportunity to prepare a defense. *Id.* at 1560. In determining whether a hearing should be held on a motion for sanctions, courts should consider the general circumstances of the case, the severity of the sanction being considered, and the judge's participation in the case and knowledge of the facts. *Id.* at 1561. Although a court is not required to hold an evidentiary hearing on a motion for sanctions, "when a court is asked to resolve an issue of credibility or to determine whether a good faith argument can be made for the legal position taken, the risk of an erroneous imposition of sanctions un-

---

5. Movants did file a response to each of the motions to dismiss, however, Movants did not object to the dismissals. In their responses, Movants requested that the Court impose sanctions under Bankruptcy Rule 9011.

6. R.Bankr.P. 9011(a).

7. Fed.R.Civ.P. 11.

der limited procedures and the probable value of additional hearings are likely to be greater." *Id.*

The Court notes that each of the Debtors received notice of the motion for sanctions in August of 1987. Because Movants requested that sanctions be imposed upon Debtors, the Court deemed it appropriate to hold a hearing on the motions to afford Debtors an opportunity to respond to the allegations and to justify their actions. A hearing was held on October 29, 1987. Debtors were present at the hearing and were represented by counsel. In the Court's opinion, Debtors understood the nature of the motions and presented a competent and informed defense.

■ Having determined that the requirements of due process have been met, the Court will now address the merits of the motions. When a bankruptcy petition is filed, section 362 of the Bankruptcy Code imposes an automatic stay on any actions against the debtor or property of the estate.[8] The purpose of the automatic stay is to provide the debtor with a "breathing spell" during which he can develop a plan of repayment or reorganization free from financial pressures.[9] The automatic stay also serves to protect creditors of the debtor since it helps to promote an orderly distribution of the property of the bankruptcy estate.[10] Thus, the filing of a bankruptcy petition will frequently cause delay in other judicial proceedings. Filing a bankruptcy petition in an attempt to delay creditors is not necessarily improper if the debtor also intends to make a legitimate effort at reorganization.[11]

■ Filing a bankruptcy petition simply to forestall and delay a state court action, with no intention to effectuate a legitimate reorganization, constitutes an abuse of the Bankruptcy Code. *See In re Indian Rocks Landscaping of Indian Rocks Beach, Inc.,* 77 B.R. 909 (Bankr.M.D. Fla.1987). In filing a Chapter 11 bankrupt-

cy petition, good faith requires that the debtor have a reasonable expectation of reorganization. *In re French Gardens, Ltd.,* 58 B.R. 959, 964 (Bankr.S.D.Tex. 1986). *Cf. United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.,* ——— U.S. ———, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988) (when an unsecured creditor files a motion for relief from the automatic stay, the debtor must show that property is "essential for an effective reorganization *that is in prospect*" to prevail (emphasis in original)). Once a creditor has established a prima facie case of a bad faith filing, the burden shifts to the debtor to show a legitimate purpose for the filing of the bankruptcy petition, namely, to reorganize. *See In re Eighty South Lake, Inc.,* 63 B.R. 501, 508–09 (Bankr.C.D.Cal.1986).

■ After considering the evidence and the testimony presented at trial, the Court is convinced that TV Tempo and Mr. King each filed a Chapter 11 petition in order to delay the trial of the Texas suit. Neither Debtor was prepared to proceed in the Texas litigation since each was without legal representation. Mr. King testified that he believed filing a bankruptcy petition was the only option to forestall the Texas suit. The Court can find no evidence of an intent to reorganize on the part of either Debtor. Debtors filed their Chapter 11 bankruptcy petitions within hours after being advised that such action would delay the trial of the Texas suit. It is obvious to the Court that TV Tempo and Mr. King filed their Chapter 11 petitions in order to delay an impending state court action, thus giving Debtors additional time to prepare to litigate the state court action. *Cf. In re Whitten,* 11 B.R. 333, 7 Bankr.Ct. Dec. 902, 4 Collier Bankr. Cas.2d 817 (Bankr.D.C.1981) (filing Ch. 13 petition solely to gain time to obtain refinancing was improper and violated Rule 9011). The purpose of the automatic stay is to aid reorganization of the debtor's financial condition; the automatic stay was

---

**8.** 11 U.S.C.A. § 362 (West 1979 & Supp.1987).

**9.** 11 U.S.C.A. § 362 advisory committee's note.

**10.** *Id.*

**11.** *See Cinema Service Corp. v. Edbee Corp.,* 774 F.2d 584, 586 (3d Cir.1985); *In re Whitten,* 11 B.R. 333, 338, 7 Bankr.Ct.Dec. 902, 904, 4 Collier Bankr.Case.2d 817, 824–25 (Bankr.D.C.1981).

not intended to be used solely as a means of altering a debtor's position in a state court action. *Cf. Cinema Service Corp. v. Edbee Corp.*, 774 F.2d 584 (3d. Cir.1985) (utilizing the automatic stay for purposes other than reorganizing constitutes abuse of judicial process).

Rule 9011 clearly states that a court shall impose appropriate sanctions once it has determined that a bankruptcy petition was filed for an improper purpose.[12] Rule 9011 does not specify what sanctions are to be imposed, although it does state that a court may award reasonable expenses, including reasonable attorney's fees, as a sanction. Rule 9011 encompasses a broad range of sanctions, thus allowing a court to tailor sanctions to the particular facts of the case.[13]

Movants have requested that the Court impose sanctions in the amount of $14,431. This figure reflects expenses and attorney's fees arising from the Texas litigation as well as the bankruptcy actions. In the Court's view, Movants' request is excessive. Many of the expenses for which Movants seek reimbursement would have been incurred regardless of the filing of the Chapter 11 bankruptcy petition. Other expenses for which Movants seek reimbursement are speculative. To impose these expenses upon Debtors would not be appropriate. In the Court's view, such a sanction would be unfairly punitive.

Movants have incurred expenses related to the bankruptcy cases for which Movants should be reimbursed. The Court has carefully considered several factors in determining the appropriate amount to be imposed as sanctions, including: (1) the expenses incurred by Movants, (2) the Debtors' degree of familiarity with the bankruptcy process and Rule 9011, (3) the dual

purpose of Rule 9011, namely, punishment and deterrence, and (4) the severity of the violation. The Court has carefully reviewed the expenses for which Movants seek reimbursement and the itemization of time submitted by Movants' attorney. The Court is persuaded that Movants should be reimbursed the $3100 that they have paid to their attorney for services rendered in the bankruptcy cases.[14] In addition, Movants should be reimbursed $600 for the reasonable and necessary expenses which they incurred due to the filing of the bankruptcy petitions. The Court finds that under the facts before it, sanctions in the amount of $3700 are appropriate, and that TV Tempo and Mr. King should be held jointly and severally liable for this amount. Movants are therefore entitled to collect a total amount of $3700.

---

**12.** R.Bankr.P. 9011(a). *See Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174–75 (D.C.Cir.1985) (court is required to impose sanctions once court determines that sanctionable circumstances exist).

**13.** R.Bankr.P. 9011 advisory committee's note; Fed.R.Civ.P. 11 advisory committee's note.

**14.** The Court is not fully persuaded that all of the time included by Movants' attorney on his

itemization was necessary. Since the Court is considering a motion for sanctions rather than a request for attorney's fees, however, the Court finds it unnecessary to address the merits of the itemization. No evidence regarding the hourly rate charged by Movants' attorney has been submitted. The Court notes that Mr. Mirza testified at trial that the amount he would have to pay his attorney was contingent upon the Court's decision.