**Philip D. ROBERTS, et al., Plaintiffs,**

v.

**Werner HEIM, et al., Defendants,**

**and Consolidated Actions.**

**Nos. C 84–8069 TEH, C 87–6174 TEH and C 88–3373 TEH.**

United States District Court,
N.D. California.

July 17, 1995.

*ORDER*

THELTON E. HENDERSON, Chief Judge.

On June 26, 1995, the Court held a hearing on a motion for entry of default and award of attorney's fees filed by the class plaintiffs in the above-captioned action. Having carefully considered the oral and written arguments submitted by the parties, and good cause appearing, the Court hereby GRANTS IN PART plaintiffs' motion for the reasons set forth below. Further, defendant's motion for leave to assert certain cross-claims is taken off calendar pending further order of this Court. Finally, defendant is ORDERED TO SHOW CAUSE why it should not be barred from asserting any cross- or counterclaims not in existence prior to May of 1993, as explained below.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The instant securities fraud class action, now over a decade old, was filed in 1984 by a plaintiff class composed of limited partners in certain partnerships that were established to pursue investment opportunities involving oil exploration. TexOil International Corporation ("TexOil") has been a defendant in this action since April of 1987.[1]

In the fall of 1991, the Court scheduled a pretrial conference and ordered the parties to meet and confer and to prepare a joint pretrial statement pursuant to Fed.R.Civ.P. 16 and the Local Rules. It is undisputed that counsel for TexOil neither participated in the meet and confer session nor contributed to the preparation of the pretrial statement. TexOil also failed to submit proposed voir dire questions, verdict forms and jury instructions as required by the Court's pretrial order.

In the fall of 1992, the Court again ordered the parties to meet and confer and prepare a joint pretrial statement for a pretrial conference to be held on January 20, 1993. The pretrial order directed counsel to be pre-

---

1. On October 7, 1985, plaintiffs filed their third amended complaint, in which TexOil was added as a defendant. However, that complaint was dismissed in 1986. In April of 1987, plaintiffs renewed charges against TexOil in their fifth amended complaint. TexOil answered that complaint in May of 1987.

pared to begin trial on February 2, 1993. TexOil's counsel again neither met and conferred nor contributed to the pretrial statement, and again did not submit any of the required documents prior to trial. TexOil's attorney attended the January 20 conference, at which time he was informed that TexOil was the sole remaining defendant in the case. Plaintiffs' counsel indicated that plaintiffs intended to file a motion for entry of default against TexOil.

On January 23, 1993, plaintiffs moved for entry of default pursuant to Rule 55(a) against TexOil. The Court initially set that motion for hearing on March 8, 1993. After once continuing that hearing, on the basis of TexOil's representation that it sought to enter into settlement discussions with the plaintiffs, the Court heard oral argument on that motion on April 19, 1993.[2] The Court took the motion under submission, intending to issue a ruling shortly.

Before the Court could rule on the motion, however, TexOil filed for bankruptcy on May 6, 1993, triggering the entry of an automatic stay of plaintiffs' claims pursuant to 11 U.S.C. § 362(a). Since plaintiffs' motion for default was still under submission, the Court was precluded from ruling on it by virtue of the entry of the stay. As the Court noted in 1994, "[d]espite the years of proceedings in this Court, TexOil was able to block any further action against it in this Court by means of the automatic stay that issues upon filing for bankruptcy protection." March 30, 1994 Order at 10.

On September 29, 1993, plaintiffs filed in the Houston bankruptcy court a "proof of claim" against TexOil, detailing plaintiffs' alleged claims against TexOil. At that time, plaintiffs also requested that the automatic stay be lifted so as to permit plaintiffs to continue litigating those claims in this Court. On October 25, 1993, plaintiffs filed a separate complaint in the Houston bankruptcy court requesting that their claims against TexOil be adjudicated and liquidated in that forum. Plaintiffs explained that that complaint was an alternative pleading aimed at protecting the plaintiffs' claims in the event the bankruptcy court denied the September 29 request and refused to allow them to continue litigating those claims in this Court.

On December 15, 1993, the Houston bankruptcy court granted in part plaintiffs' request to lift the bankruptcy stay. The court lifted the stay on the condition that trial of plaintiffs' claims commence in this Court by June 27, 1994, the date on which the Houston court had set these claims to go to trial in Houston. The court's order provided that if the trial in this Court did not begin by June 27, the claims would go to trial in Houston on that date.[3]

On December 23, 1993, less than ten days after the stay was lifted, TexOil filed "counterclaims" against the plaintiffs in the bankruptcy court.[4] Concerned over what it perceived to be an effort to forum shop and undermine its jurisdiction, the Court entered a temporary restraining order enjoining TexOil from pursuing these claims in the bankruptcy court or any other forum but this Court. In defiance of that injunction, TexOil filed what it styled an "emergency motion" in the bankruptcy court, in which it essentially

**2.** The Court is convinced that TexOil's representations regarding its intent to pursue settlement were made in bad faith, and that TexOil was in fact stalling for time. The Court recognized as much in March of 1994 when it imposed civil contempt sanctions on defendant's counsel. *See* March 30, 1994 Order at 9 ("No such prospect of fragmented adjudication of the claims and counterclaims would have arisen had TexOil not, after making various representations to this Court in the spring of 1993 in order to stall this Court's entering of the default judgment on plaintiffs' claims against TexOil, without warning sought bankruptcy protection in Houston.").

**3.** The bankruptcy court subsequently explained in March of 1994 that the condition contained in

its order lifting the automatic stay was in no way meant to constitute an ultimatum to this Court. *See* Cera Supp.Decl.Exh. B at 8 (transcript of March 3, 1994 hearing at which the bankruptcy court explained that its "order was entered solely to make certain that the litigants proceeded forward and with trial preparation in this case and did not delay a very old case even further"). For this reason, the bankruptcy court at that time suspended the portion of its order requiring the case to be tried either in Houston or this Court by July 27. *Id.*

**4.** These "counterclaims" were in substance the same claims which TexOil still seeks to file a year and a half later in this Court as "cross-claims."

asked that court to bar the plaintiffs from seeking entry of a preliminary injunction incorporating the terms of the TRO then in force. In response to TexOil's attempt to evade the clear import of the restraining order, plaintiffs moved for the entry of civil contempt sanctions against TexOil and its counsel. Shortly thereafter, the bankruptcy court denied the "emergency motion," and the Court entered a preliminary injunction barring TexOil from pursuing its "counterclaims" in any forum but this Court.

At the civil contempt hearing before the Court on March 14, 1994, TexOil's counsel candidly admitted that TexOil had "filed the bankruptcy proceeding because it was concerned about the anticipated judgment that might be entered by this Court which would render it totally insolvent and incapable of paying its debts." Cera Decl.Exhibit E (Transcript of March 14, 1994 hearing). Counsel further represented that "with the potential for a default judgment being entered by this Court, and out of a fear that that might take place, TexOil chose to exercise its rights to file Chapter 11." *Id.* In the March 30, 1994 Order, the Court found TexOil's then-counsel in civil contempt for disregarding the prior temporary restraining order.

In January of 1995, close to two years after TexOil filed for bankruptcy, the bankruptcy court ordered TexOil to file a Plan of Reorganization and Disclosure Statement. The record does not indicate that TexOil took any steps to reorganize its financial affairs or submit these documents before that date. In response to the bankruptcy court's order, TexOil filed the required documents, which that court found completely inadequate at an April 4, 1995 hearing.[5]

Subsequently, TexOil's counsel, in response to an order to show cause issued by the bankruptcy court, agreed with the bankruptcy judge that the Chapter 11 action should be dismissed because reorganization was "premature" given that the action pending in this Court still had not been resolved. The bankruptcy court dismissed the bankruptcy proceeding on May 1, 1995. On May 22, 1995, class plaintiffs filed the instant motion for entry of TexOil's default.

## II. *LEGAL STANDARD*

■ It is well established that "[c]ourts have inherent equitable powers to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices." *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 916 (9th Cir.1987).[6] However, this power is limited by the requirements of due process. *Id.* (citing *Phoceene Sous–Marine v. U.S. Phosmarine, Inc.,* 682 F.2d 802, 806 (9th Cir.1982)).

■ District courts also have the inherent power to control their dockets. *Thompson v. Housing Authority,* 782 F.2d 829, 831 (9th Cir.1986), *cert. denied,* 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986). When a court exercises this power, however, it must remember that default and dismissal are such harsh penalties that they should be imposed as a sanction only in extreme circumstances. *Henderson v. Duncan,* 779 F.2d 1421, 1423 (9th Cir.1986). The Ninth Circuit teaches that a district court should consider five factors in determining whether a dismissal or default is appropriately entered pursuant to the court's power to control its docket. The court is to weigh:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Thompson,* 782 F.2d at 831.

■ Sanctions imposed by a district court are reviewed for abuse of discretion and will

---

5. The bankruptcy court's words speak for themselves:

> This document that was filed is incoherent and unintelligible. It is the worst disclosure statement I have ever seen ostensibly filed by an attorney. And I am going to set this case for a dismissal.

Cera Decl., Exhibit G (transcript of April 4, 1995 disclosure statement hearing).

6. This standard is equally applicable where, as here, a party seeks entry of default, a condition precedent to the entry of a default judgment.

not be reversed absent a definite and firm conviction that the district court made a clear error of judgment. *Halaco Engineering Co. v. Costle,* 843 F.2d 376, 379 (9th Cir.1988).

### III. *DISCUSSION*

Plaintiffs contend that, under the circumstances here present, the entry of TexOil's default is justified on two separate but related grounds. Plaintiffs argue 1) that TexOil's improper filing and prosecution of the Houston bankruptcy proceeding constituted an abuse of process sufficient to warrant the entry of default pursuant to the Court's inherent power to sanction bad faith conduct during litigation; and 2) that TexOil's failure between 1991 and 1993 to obey this Court's orders regarding the preparation of a pretrial statement and the submission of pretrial documents as much warrants the entry of default now as it did in January of 1993, given that TexOil's default would have been entered at that time but for its bad faith representations to the Court. Because the Court believes the issue of whether TexOil's bankruptcy filing constituted an abusive litigation practice to be of primary significance given the current posture of this case, the bulk of the following analysis will be devoted to that issue.

As noted above, courts have inherent equitable powers, limited by due process principles, to dismiss actions or enter default judgments for "failure to prosecute, contempt of court, or abusive litigation practices." *Tele-Video Sys., Inc. v. Heidenthal,* 826 F.2d 915, 916 (9th Cir.1987). In order to determine whether TexOil's actions in making bad faith representations to the Court and subsequently filing, pursuing, and eventually dropping its bankruptcy claim merit the entry of default, therefore, the Court must determine whether those actions constituted an "abusive litigation practice" under the totality of the circumstances here.

It is clear that a district court may, pursuant to its inherent powers, impose sanctions on a party or its counsel for making bad faith misrepresentations to the court. *See, e.g., Mark Industries, Ltd. v. Sea Captain's Choice, Inc.,* 50 F.3d 730, 732–33 (9th Cir.

1995) (upholding district court's imposition of sanctions on attorney for bad faith conduct including misrepresentation of facts to the court and emphasizing that the court was within its discretion to view attorney's actions as "willful abuse of the judicial process or bad faith conduct"). As explained above, the Court is convinced that TexOil's representations regarding its intent to reach a settlement agreement were not genuine and amounted instead to a bad faith effort to stall for time in hopes of avoiding the anticipated entry of an adverse ruling by the Court. Accordingly, TexOil's bad faith conduct in misrepresenting its intentions to the Court in early 1993 provides a basis for the imposition of sanctions here.

Further, ample case law makes clear that the filing of a bankruptcy petition for the purpose of forestalling the progress of a pending case constitutes sanctionable conduct. Numerous decisions of bankruptcy and other federal courts explain that the filing of a bankruptcy petition in order to prevent some anticipated detrimental event from taking place in an action already pending, in the absence of a bona fide intent to reorganize on the part of the debtor, constitutes abusive conduct. *See In re King,* 83 B.R. 843, 847 (Bankr.M.D.Ga.1988) ("Filing a bankruptcy petition simply to forestall and delay a state court action, with no intention to effectuate a legitimate reorganization, constitutes an abuse of the Bankruptcy Code"); *Cinema Service Corp. v. Edbee Corp.,* 774 F.2d 584, 585–86 (3d Cir.1985) (upholding imposition of sanctions under Federal Rule of Bankruptcy Procedure 9011[7] on party which "did not file its [Chapter 11 bankruptcy] petition for the purpose of reorganization but solely for delay"); *In re Trina Assocs.,* 128 B.R. 858, 872 (Bankr.E.D.N.Y.1991) (pointing out that "it is recognized that seeking the protection of the automatic stay to derail a foreclosure is only appropriate when the Debtor intends to and has the wherewithal to reorganize"); *In re 2218 Bluebird Ltd. Partnership,* 41 B.R. 540, 546 (Bankr. S.D.Cal.1984) (holding that filing of Chapter 11 proceeding "solely to invoke the protec-

---

**7.** Bankruptcy Rule 9011 is the Bankruptcy Code equivalent of Rule 11.

tion of the automatic stay without an intent to reorganize" amounted to "abuse [of] the jurisdiction of the Bankruptcy Court"); *In re Powers*, 135 B.R. 980, 993 (Bankr.C.D.Cal. 1991) (explaining that "[w]here a debtor utilizes the automatic stay without the intent or ability to reorganize [its] financial affairs or to perform a realistic payment plan, [it is] abusing the bankruptcy system").[8]

Given the clarity of the legal authority holding that a bankruptcy filing is made in good faith only when the debtor has a bona fide intent to conduct a legitimate reorganization of its financial affairs, the critical question in the instant case is whether TexOil had such intent when it filed its Chapter 11 action in May of 1993. If TexOil did not, its filing of the bankruptcy petition was an "abuse of the Bankruptcy Code" sanctionable under the reasoning of the above cases, and would accordingly constitute an "abusive litigation practice" sufficient to warrant the entry of default as a sanction here.

■ Courts considering whether a party filing a bankruptcy petition has done so in good faith have stressed that "[w]hether the required good faith exists in any bankruptcy case depends upon the facts and circumstances presented...." *In re Powers*, 135 B.R. 980, 991 (Bankr.C.D.Cal.1991). Courts have pointed to particular circumstances which constitute indicia of bad faith, including situations in which a party files without "an honest and genuine desire to use the statutory process to effect a plan of reorganization" and those in which a party "abuse[s] the judicial process to delay creditors or escape the day of reckoning in another court." *Id.* However, the determination of whether a bankruptcy filing was made in bad faith is to be made on the basis of the totality of the evidence before the court, rather than through a strict weighing of particular factors. As explained by the *Powers* court:

No matter which list of factors, or narrative indicia, any particular court may apply to determine good faith, in reaching its conclusion, the "totality of the circumstances" test must be applied. The question to be raised is: Whether or not, under all the circumstances of the case, there has been an abuse of the provisions, purpose or spirit of the Bankruptcy Code?

*Id.* at 994.

Viewed within the context of the totality of the circumstances, several types of conduct by a party filing a bankruptcy action provide strong support for a finding that that party lacked any legitimate intent to reorganize. First, where a party does not suggest any legitimate alternative purpose for filing a Chapter 11 petition other than to freeze pending litigation, the court may view such conduct as evidence that that party did not possess the requisite intent or ability to reorganize at the time of the filing. A debtor should be able to produce nonconclusory evidence that it both intended to and was able to effectuate a legitimate financial reorganization.

Second, an absence of reorganization activity by the debtor during the pendency of its bankruptcy action implies that the filing of that action was not motivated by a good-faith intent to reorganize. In other words, a party's failure to take actual steps to reorganize its affairs while its bankruptcy proceeding is pending is strong evidence that it did not have any intent to reorganize at the time it filed the bankruptcy action. Where a party willingly agrees to dismiss its bankruptcy action and abandons its ostensible efforts to reorganize, such conduct further supports an inference that those reorganization efforts were insubstantial and illegitimate in the first instance.

Third, an admission by counsel that the Chapter 11 action was filed for the purpose of arresting the progress of a pending action may obviously constitute evidence that an intent to reorganize did not motivate the bankruptcy filing.

Taking into account the totality of the circumstances in the record, the Court is firmly

---

8. In its papers, TexOil contends, without citing any authority whatsoever, that "any party [can] avail itself of its constitutional right to resort to the United States Bankruptcy Court for any reason at any time, which includes seeking to avoid entry of default under the circumstances set forth here." Def.'s Mem. P & A at 10. As the foregoing citations should make abundantly plain, TexOil's argument simply could not be more wrong.

convinced that TexOil's May 6, 1993 bankruptcy filing was made for the improper purpose of avoiding this Court's anticipated adverse ruling on plaintiffs' original default motion. First, TexOil does not suggest any alternative purpose for the filing of its bankruptcy petition other than to freeze the suit pending in this Court. No evidence in the record indicates that TexOil had any intent to effect a legitimate financial reorganization at the time it filed for bankruptcy. A two-page Declaration from K.R. Anderson, TexOil's president, submitted with the defendant's response to the instant motion includes a blanket statement that "TexOil's having sought protection under the United States Bankruptcy Code has never been attended by any desire or intent to in any way conduct itself in any manner amounting to bad faith...." Anderson Decl. at 2. However, nowhere does TexOil tangibly demonstrate or even argue that it filed bankruptcy in order to effect a legitimate financial reorganization, and such intent is a necessary prerequisite to the good faith filing of a bankruptcy action. Its conclusory protestation notwithstanding, therefore, TexOil simply has provided no evidence, let alone reliable evidence, that it had a proper motive—a bona fide intent to reorganize financially—for the Chapter 11 filing.

Instead, TexOil seeks to justify its actions by reference to its ostensible "constitutional right" to file bankruptcy "for any reason at any time." Def.'s Mem. P & A at 10. That position has no support whatsoever in the law. The fact that TexOil claims that it is not legally obligated to establish its legitimate intent to reorganize, rather than simply demonstrating that it in fact possessed such intent, is also evidence that it did not in fact have the requisite intent for a good faith Chapter 11 filing. That evidence in turn supports the conclusion that TexOil filed for bankruptcy for the purpose of delay rather than as a part of a bona fide effort to reorganize.

Second, there is no evidence that TexOil took any actions to reorganize until January of 1995, nearly two years after it filed for bankruptcy. TexOil filed for bankruptcy in May of 1993. The record indicates that Tex-Oil took no action in the bankruptcy court until December 23, 1993, a little over one week after the bankruptcy judge lifted the automatic stay on December 19. On December 23, TexOil filed "counterclaims" against the class plaintiffs based on the same subscription agreements and promissory notes upon which the plaintiffs were suing TexOil in this Court, markedly expanding the scope of the issues which had been presented in this action before it was stayed solely as a result of TexOil's own bad faith conduct in the spring of 1993. In other words, TexOil's first act of any significance in the bankruptcy action had nothing to do with "reorganization." Instead, TexOil in effect attempted to litigate claims that, but for the initial entry of the stay, would have had to have been raised in this Court well prior to the original February 2, 1993 trial date. Such a total absence of efforts to reorganize the company for nearly two years following the bankruptcy filing strongly implies that the bankruptcy filing was baseless.

In addition, when TexOil finally did, in 1995, file a Plan of Reorganization and Disclosure Statement in response to a court order issued by the bankruptcy court, those documents were completely inadequate. The Bankruptcy Court noted on the record that the documents were "incoherent and unintelligible," and called TexOil's filing "the worst disclosure statement I have ever seen ostensibly filed by an attorney." Cera Decl.Exh. G. In other words, nearly two years after availing itself of the automatic stay procedure expressly intended to "provide the debtor with a 'breathing spell' during which he can develop a plan of repayment or reorganization free from financial pressures," *In re King*, 83 B.R. at 847, TexOil had not given sufficient thought to its reorganization to file even a *coherent* plan and disclosure statement with the bankruptcy court. TexOil's inability in 1995 to present the bankruptcy court with anything better than "incoherent and unintelligible" filings concerning reorganization strongly suggests that TexOil was not—in 1993 or at any time since—making the requisite good-faith effort to reorganize

its financial affairs.[9]

Third, TexOil's counsel has admitted both that it filed the Chapter 11 action to freeze proceedings in the action in this Court and that reorganization was "premature" even as late as 1995. At a hearing in March of 1994 on an Order to Show Cause why civil contempt sanctions should not be imposed on TexOil's counsel, one of TexOil's attorneys "unabashedly" admitted that TexOil "filed the bankruptcy proceeding because it was concerned about the anticipated judgment that might be entered by this Court." Cera Decl.Exh. E; *see also* March 30, 1994 Order at 9 (noting that at the March 1994 hearing TexOil's counsel "candidly admitted that [TexOil's actions in filing for bankruptcy were] taken in order to prevent this Court's entering judgment on the claims against TexOil"). Essentially, counsel's statement amounts to an admission that TexOil was worried that it would have to default unless it filed for Chapter 11, and that admission is sufficient to support an inference that TexOil filed for bankruptcy for the improper purpose of freezing a pending action rather than for the purpose of reorganization.

Further, in response to an Order to Show Cause why the Chapter 11 proceeding should not be dismissed issued by the bankruptcy court, TexOil admitted that it was "premature to effectively reorganize this company given the pending status of litigation" in this Court. Cera Decl.Exh. H (Response to Order to Show Cause submitted by John Riddle, counsel for TexOil). TexOil agreed to the dismissal of the Chapter 11 action, and stated that it should "seek to reorganize as appropriate *following* resolution of the aforesaid litigation in California, now scheduled for trial in October, 1995." *Id.* (emphasis added). In other words, when the bankruptcy court informed TexOil of its intent to dismiss the Chapter 11 filing, which had been the sole basis for the entry of the automatic stay which prevented this Court from ruling on plaintiffs' earlier motion for entry of default, TexOil willingly agreed to dismiss that case and once again turn its undivided attention to the litigation which TexOil's improper conduct had stalled in the first place.

TexOil's admission that reorganization is "premature" in 1995 because an action is still pending in this Court constitutes strong evidence that TexOil knew or reasonably should have known that a Chapter 11 filing was premature in May of 1993 as well. Then, as now, the action in this Court was pending. TexOil does not, because it cannot, cite any factual circumstance which would make reorganization premature in 1995 when it was not premature *two years earlier*. The fact that TexOil now admits that reorganization, which must be the goal of every good faith bankruptcy filing, is impossible prior to the resolution of the action in this Court supports a finding that TexOil's bankruptcy filing constituted an abuse of process rather than a good-faith reorganization strategy.[10]

---

**9.** TexOil claims that "the fact that trial of this case did not occur [by July of 1994] certainly has had an impact upon the ability of TexOil to file a meaningful plan of reorganization." Mem.P & A at 12. This argument is wholly unpersuasive. If in fact TexOil had the legitimate intent and capability to reorganize as of May of 1993, its ability to do so would in no way have depended on the eventual trial date of the action before this Court. When TexOil filed for bankruptcy, this case was pending, and TexOil had no way of knowing when the case would be resolved. In other words, TexOil's Chapter 11 filing was either proper given the pendency of a suit of indeterminate duration or it was not.

Counsel's insinuation that TexOil's "reliance" on the bankruptcy court's July 1994 trial deadline was somehow responsible for its utter failure to produce a credible reorganization plan completely ignores TexOil's obligation to have both the intent and the reasonable ability to reorganize *at the time a Chapter 11 action is filed. See*

*In re King*, 83 B.R. at 847 ("In filing a Chapter 11 bankruptcy petition, good faith requires that the debtor have a reasonable expectation of reorganization."). Common sense and the facts in the record indicate that TexOil cannot logically claim that it had such an expectation at the time of the filing but somehow "lost" it due to the continuation of the trial date in this action. To the extent that TexOil is attempting to so argue, the Court unequivocally rejects that assertion as patently absurd.

**10.** Straining mightily to prevent the entry of default here, TexOil contends that "the only thing that TexOil has stated is that the timing of a successful *plan of reorganization,* pursuant to the Bankruptcy Code and its requirements is *premature* at this time." Def.'s Mem.P & A at 11 (emphasis in original). While TexOil no doubt intends this statement to demonstrate its good faith, it is in reality highly damning. Once TexOil admits that the reorganization of the compa-

In light of the totality of the circumstances contained in the record, therefore, the Court finds ample legal and factual support for a finding that TexOil's filing of its bankruptcy petition was done in bad faith and constituted an "abusive litigation practice." TexOil's actions in this litigation have amounted to an abuse of the provisions, purpose and spirit of the bankruptcy code and an abuse of the process of both this Court and the Houston bankruptcy court. Accordingly, under *TeleVideo*, the entry of default as a sanction for this conduct is appropriate unless such sanction would violate due process principles.

The Court finds that due process principles would not be violated by the entry of default here. Cases discussing the "due process" limitation on a court's inherent powers do not explicitly define the substantive content of those limitations. That said, however, the key factor in determining whether the entry of default violates due process appears to be whether the conduct for which default was entered related to the merits of the case, or only to a peripheral matter. *See, e.g., TeleVideo*, 826 F.2d at 917 (upholding lower court's entry of default where appellant's perjury "infected all of the pretrial procedures and interfered egregiously with the court's administration of justice" and "greatly disadvantaged the plaintiffs who had planned their strategy and developed their case to respond to [appellant's] false evidence"). *Cf. SEC v. Seaboard Corp.,* 666 F.2d 414, 416–17 (9th Cir.1982) (finding that default judgment against defendant for failure to pay a fine when the defendant had complied with an order to give a deposition was punitive and a violation of due process as the court could not presume that the case lacked merit).

On the basis of the record before it, the Court finds that TexOil's bankruptcy filing and subsequent events interfered egregiously with the court's administration of justice, affecting the merits of this case and severely prejudicing the plaintiffs. In January of 1993, TexOil faced a motion for entry of default which, if granted, would have terminated this entire litigation. At that time, as detailed above, TexOil had twice failed to submit required pretrial documents outlining the substance of its position and the manner in which it intended to defend this action at trial. At *no* time prior to the then-set trial date of February 3, 1993 did TexOil so much as *mention* its intention to file "counterclaims" of any sort against the class plaintiffs in this action. In fact, the first mention of those claims came over ten months *after* the trial date scheduled in this Court had passed, when TexOil attempted to file its counterclaims in the bankruptcy court. It is clear, therefore, that by virtue of the improper bankruptcy filing and entry of the automatic stay, TexOil was able to prepare and present *wholly new claims* in an action which was nearly a decade old at the time, well after trial of that action would have begun had TexOil not filed for Chapter 11. The introduction of such entirely new claims on the eve of trial in a case as old as this one would constitute sanctionable conduct; where, as here, a party has gone several steps further and abused the process of this Court and the bankruptcy court in order to introduce such claims nearly a year *after* the eve of trial, the Court is convinced that even the severe sanction of entry of default is warranted.

For this reason, TexOil's sanctionable conduct goes directly to the heart of the merits of this litigation. Because of TexOil's ever-shifting legal strategies, tactics, and theories (which it bought time to concoct by means of the bankruptcy filing), the Court has been unable to ensure the orderly progress of this action toward trial. By virtue of the reprieve granted as a result of the bankruptcy filing, TexOil was able to formulate its "counterclaims"—which had never been raised in the preceding several years that TexOil had been a defendant in the case—and force the plaintiffs to address those claims in the bankruptcy court. Even if the Court had denied plaintiffs' previous motion for entry of default and allowed this litigation to go forward

---

ny is "premature," it *necessarily* also admits that the *filing* of the bankruptcy petition was premature, since a present intent and ability to reorganize is a *prerequisite* to a good faith bankruptcy filing. Also, TexOil's counsel seems oblivious to the plain fact that something which it admits is "premature" today was obviously even *more* premature over two years ago.

in 1993, the Court would not have allowed TexOil to inject its newly-minted "counterclaims" into this action well after what was to have been the trial date. For this reason, it is evident that TexOil to this day seeks to avail itself of a substantive windfall made possible solely by virtue of the bankruptcy filing, entry of the automatic stay and ensuing two-year delay: the opportunity to vastly expand the subject matter of this litigation to incorporate alleged claims against the class plaintiffs. Such improper conduct clearly goes to the substance of this action, and the entry of TexOil's default under these circumstances in no way offends due process.

Further, the entry of default against Tex-Oil here is remedial rather than punitive, and accordingly does not implicate another of the concerns frequently expressed by courts in conducting the due process analysis. *See Seaboard Corp.*, 666 F.2d at 417 (reversing district court's entry of default because "it appears to have been punitive in nature"). As this Court has previously indicated, had TexOil not filed for bankruptcy when it did, the Court would have granted plaintiffs' previous motion for entry of default.[11] Having carefully conducted the five-factor analysis set out in *Thompson v. Housing Authority*, 782 F.2d 829, 831 (9th Cir.), *cert. denied*, 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986), the Court had determined that the entry of default was warranted by TexOil's repeated failure to comply with the Court's pretrial orders.[12] That ruling would have been firm-

11. *See* March 30, 1994 Order at 2 (explaining that "[i]n May 1993, as the Court was about to enter a default judgment for plaintiffs on the claims against TexOil, TexOil filed for bankruptcy").

TexOil's current counsel and its president, K.R. Anderson, now argue (as did Anderson two years ago) that the blame for the company's failure to participate in the pretrial conference and statement preparation should be placed solely on David Greenberg, TexOil's local counsel at the time of the transgressions. The Court is unpersuaded by this self-serving excuse.

It is true that, as a general rule, a district court must consider the relative fault of the client and the attorney in deciding whether to impose the sanction of default or dismissal. *In re Fitzsimmons*, 920 F.2d 1468, 1472, 1473 n. 3 (9th Cir. 1990). However, it is clear that the court is not precluded from dismissing an action even when only the attorney is at fault. *Id.* Further, a party cannot avoid default simply by arguing that he or she is an innocent party who will be made to suffer for the errors of his or her attorney. *Hamilton v. Neptune Orient Lines Ltd.*, 811 F.2d 498, 499 (9th Cir.1987). The Ninth Circuit has repeatedly held that "the faults and defaults of the attorney may be imputed to, and their consequences visited upon, his or her client." *West Coast Theater Corp. v. Portland*, 897 F.2d 1519, 1523 (9th Cir.1990).

Additionally, instructions given to Greenberg prior to January of 1993 by Anderson clearly indicate that TexOil itself justly bears significant responsibility for adopting an unreasonably passive approach to the defense of this action. In a declaration filed on March 5, 1993, Anderson admitted that "it was concluded that it would be a waste of the court's time and TexOil's money to be actively engaged in [the] defense" of this action because the "major defendants" in the case were "spending a great deal of time and money" doing so. Anderson 1993 Decl. at 2. However, one of the obvious risks of calculatedly adopting such a passive approach to one's own defense is that the "major defendants" may settle out of the case, as they did here. Having displayed a marked reluctance to "waste" its money complying with this Court's orders, TexOil cannot credibly argue that Greenberg alone should shoulder full responsibility for TexOil's failure to fulfil its pretrial responsibilities. That argument was unpersuasive in 1993, and it remains unpersuasive today.

Given the totality of the facts in the record concerning TexOil's pretrial misconduct, therefore, the Court is confident that neither error nor injustice would have resulted had TexOil's default been entered in 1993 due to the abdication of its pretrial responsibilities by TexOil and its counsel.

12. Fed.R.Civ.P. 16(f) provides that if a party or a party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or its attorney is substantially unprepared to participate in the conference or fails to participate in good faith, the court may order sanctions as provided in Fed. R.Civ.P. 37(b)(2)(C). Rule 37(b)(2)(C) provides for the sanction of judgment by default against the disobedient party.

Under *Thompson*, a court is to consider five factors in determining whether a dismissal or default pursuant to Rule 16(f) is appropriate. The court in such a circumstance must weigh: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Thompson*, 782 F.2d at 831.

The facts and circumstances in the record prior to the filing of the bankruptcy petition in the spring of 1993 supported the entry of default

ly based on Ninth Circuit precedent authorizing the imposition of the sanction of dismissal for failure to comply with pretrial procedures mandated by local rules and court orders. *See, e.g., Buss v. Western Airlines, Inc.*, 738 F.2d 1053 (9th Cir.1984), *cert. denied*, 469 U.S. 1192, 105 S.Ct. 968, 83 L.Ed.2d 972 (1985).

For this reason, had TexOil not filed its bankruptcy petition, an act which was improper for the reasons explained above, its default would have been entered in the spring of 1993. Accordingly, the entry of default against TexOil now that the impropriety of its bankruptcy filing is evident simply places TexOil in the position it would have been in had it never made that filing, and the Court is confident that its ruling does not violate due process principles.

The appropriateness of the entry of default against TexOil here becomes even more evident upon application of the *Thompson* factors to the circumstances which exist in this action today.[13] Again, the first two factors—expeditious resolution of litigation and docket management—weigh in favor of the entry of default here. As this litigation has been prolonged for over two years by proceedings set in motion by TexOil's improper conduct, the entry of default at this time serves both of the above-described interests by substantially advancing the long-overdue resolution of this action.

The third factor, prejudice to the plaintiffs, also strongly weighs for entry of default here. It is axiomatic that plaintiffs, who bear the burden of proving their claims by a preponderance of the evidence, are the parties most likely to be prejudiced by virtue of a lengthy delay like the one at issue here. During the two-year delay occasioned by TexOil's conduct, the primary claim asserted by plaintiffs against TexOil in 1987 has been eliminated by a Supreme Court ruling, forcing the plaintiffs to reframe their asserted basis for recovery in this action. Further, the memories of relevant witnesses for the plaintiffs have likely faded over the past two years, hindering the plaintiffs' presentation of their case. Finally, plaintiffs, who fulfilled the terms of this Court's pretrial preparation orders in 1991 and 1992 only to see TexOil wholly abdicate its responsibilities under those orders, must now prepare a third time for a trial on issues which one way or another would have been decided long ago but for TexOil's improper bankruptcy filing. *See Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir.1990) (upholding entry of default where defendant's actions "constituted a clear interference with the plaintiffs' ability to prove the claims and to obtain a decision in the case"). In light of the evidence on the record, therefore, the Court finds that the plaintiffs were prejudiced by TexOil's conduct here, weighing for the entry of default.

against TexOil at that time under *Thompson*. The first two factors, the public's interest in expeditious resolution of litigation and the court's need to manage its docket, clearly supported the urged entry of default. Further, TexOil's repeated failures to participate in required pretrial preparation clearly "impair[ed plaintiffs'] ability to go to trial," *Malone v. U.S. Postal Service*, 833 F.2d 128, 131 (9th Cir.1987), *cert. denied*, 488 U.S. 819, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988). Mere days before the scheduled start of trial, TexOil had not submitted any of the basic documents, such as exhibit and witness lists, proposed jury instructions, and proposed voir dire questions, which were essential to plaintiffs' preparation for trial. Under these circumstances, plaintiffs were clearly prejudiced by TexOil's transgressions.

Finally, the Court is confident that less drastic sanctions would not have been feasible or appropriate given TexOil's malfeasance on the eve of trial, and the Court had made clear in *1992* that no further continuances would be granted, fulfilling the Ninth Circuit's requirement that ade-

quate warning be given before the entry of dismissal. *See* November 6, 1992 Order; *Malone*, 833 F.2d at 133. Because four of the five *Thompson* factors weighed in favor of the entry of TexOil's default in the spring of 1993, therefore, the Court would have entered such default but for TexOil's dilatory and improper bankruptcy filing.

13. The Ninth Circuit has noted that "dismissal sanctions under Rule 37 are 'subject to much the same considerations' as those under a court's inherent powers," and has viewed the two types of cases as interchangeable. *U.S. ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 603 n. 5 (9th Cir.1988) (citation omitted). While not all post–1986 Ninth Circuit cases involving the entry of default as a sanction pursuant to the court's inherent power discuss the *Thompson* factors, *see, e.g., TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir.1987), the Court does so here out of an abundance of caution and a desire to ensure that the defendant receives all consideration which it is due.

Finally, the Court finds that no adequate lesser sanctions exist under these circumstances. In determining whether a district court has fulfilled its obligation to consider alternatives to the entry of default or dismissal, the Ninth Circuit views as relevant 1) whether the district court explicitly discussed the feasibility of less drastic sanctions and explained why alternative sanctions would be inappropriate;[14] 2) whether the court implemented alternative sanctions before ordering dismissal; and 3) whether the court warned the party of the possibility of dismissal before actually ordering dismissal. *Malone*, 833 F.2d at 132.

With regard to the first *Malone* factor, TexOil's pre-bankruptcy dereliction of its responsibilities and its subsequent improper bankruptcy filing has harmed the plaintiffs and the Court in that this conduct both 1) needlessly protracted litigation of claims on which plaintiffs were entitled to entry of default in 1993 and 2) led to pitched and time-consuming litigation over "counter-claims" never even raised by TexOil until well after the bankruptcy filing. Monetary sanctions are inadequate to remedy the disruptive effect which TexOil's actions have had on this Court's attempts to ensure the orderly administration of justice in this case, as the imposition of such sanctions would not deprive TexOil of the significant tactical and substantive benefits derived from its improper conduct. Further, while a sanction such as denying TexOil the right to file what it now styles as "cross-claims" would to some extent remedy the second harm mentioned above, it would not rectify the first. For this reason, the Court finds that no lesser sanction than the entry of default is adequate under the circumstances here.[15]

Second, the Court acknowledges that it has not explicitly implemented alternative sanc-

tions for the particular conduct which it now finds to merit the entry of default. However, it is critical to note that the imposition of the automatic stay deprived this Court of its *ability* to implement any sanction whatsoever for TexOil's pre-bankruptcy misconduct for several months after the bankruptcy filing. Further, the wrongfulness of the bankruptcy filing has only recently become apparent. Only once TexOil agreed to voluntarily dismiss its bankruptcy action and admitted that reorganization was "premature" as of 1995 did it become clear to the Court and to the plaintiffs that the 1993 Chapter 11 filing was improper.[16] For this reason, the issue of whether alternative sanctions have been tried collapses into the analysis of whether less drastic sanctions would be adequate, since the Court did not have the opportunity to consider the totality of TexOil's conduct until it received the instant motion. Under these circumstances, therefore, the Court concludes that the fact that it has not previously implemented alternative sanctions does not prohibit the entry of default here.

Finally, the Court has provided TexOil sufficient indication that its pre-bankruptcy conduct alone warranted dismissal. The Court's March 30, 1994 Order clearly indicates that default would have been entered against TexOil in 1993 *but for* its filing of bankruptcy. It follows that that order should have put TexOil on notice that the entry of default remained a strong possibility in the event that the bankruptcy filing was found to be improper at some later date. Further, the Court cannot imagine what sort of warning would be required where the misconduct at issue encompassed not just TexOil's actions in this Court, but its abuse of the process of the bankruptcy court in order to evade this Court's authority altogether. Because the Court provided TexOil as clear a warning as

---

14. The Ninth Circuit has directly noted, however, that it has "never held that explicit discussion of alternatives is *necessary* for an order of dismissal to be upheld." *Malone*, 833 F.2d at 132.

15. TexOil's counsel could suggest no such appropriate sanction either in its papers or at oral argument.

16. For this reason, TexOil's contention, raised at oral argument, that plaintiffs have somehow

waived their right to seek entry of default here is meritless. Only once TexOil in April of 1995 cavalierly agreed to drop its bankruptcy case and admitted that reorganization would be premature before the conclusion of the instant action were plaintiffs put on notice of the possibility that TexOil had never possessed the bona fide intent to reorganize which must underlie every good faith Chapter 11 filing.

possible under these circumstances, therefore, the third *Malone* factor does not bar the entry of default here.[17]

## IV. *CONCLUSION*

Because the totality of defendant's conduct prior to and following the bankruptcy filing grievously interfered with the administration of justice and amounted to an abusive litigation practice, the entry of the default of defendant TexOil International Corporation is wholly warranted here. Accordingly, plaintiffs' motion for entry of TexOil's default is hereby GRANTED.[18] TexOil's answer shall be struck and its default immediately entered in accordance with this Order.

Plaintiffs are directed to file a motion for default judgment under Fed.R.Civ.P. 55(b)(2) within 30 days of the date of this Order. The Court will not entertain a motion for reconsideration of any part of this Order.

Further, in light of the now-apparent severity of TexOil's misconduct and the fact that but for that misconduct this case would have ended in its entirety in the spring of 1993, the Court has serious questions as to the legitimacy of both TexOil's proposed "cross-claims" and its existing counterclaim against named class representative Jack Bell. Both the counterclaim and the proposed cross-claims were conceived well after TexOil's improper bankruptcy filing stayed this Court's imminent entry of default against TexOil. For this reason, the Court is inclined to believe that the denial of TexOil's motion for leave to assert cross-claims would be well justified for the reasons described in this Order. Similarly, the Court believes that the dismissal of TexOil's counterclaim as a sanction for the misconduct detailed in this Order may well be warranted under the circumstances here.

Accordingly, defendant TexOil is HEREBY ORDERED TO SHOW CAUSE in writing **within 30 days of the date of this order** why:

1) TexOil should not be barred from asserting in this action any cross- or counterclaim which had not been described with particularity in papers submitted to this Court by TexOil prior to May 6, 1993; and

2) TexOil's counterclaim against Jack T. Bell should not be dismissed as a sanction for TexOil's misconduct, in order to return TexOil to the position it would have been in had that misconduct not occurred.

Plaintiffs are to submit their response, if any, to the defendant's brief within **14 days** of the date on which that document is filed, and defendant may submit a reply within **7 days** of the filing of plaintiffs' response. At that time, the papers will be taken under submission, and a hearing on the Order to Show Cause will be set only if the Court deems such a hearing necessary and directs the parties to appear.

Defendant's motion for leave to amend to assert cross-claims is hereby taken off calendar pending further order of this Court.

**IT IS SO ORDERED.**

---

17. Here, as in virtually every case in which the entry of default or dismissal is contemplated, the public policy favoring resolution of disputes on the merits weighs against the entry of default. However, that factor is not sufficient to outweigh the other four factors, which in this case support the entry of default.

18. In its discretion, the Court DENIES plaintiffs' motion for the award of sanctions in the amount of its attorney's fees and costs expended between 1993 and the present.